484 So.2d 678 (1985)
Linda Miles STEVENSON
v.
The BOLTON COMPANY, INC. and Fireman's Fund Insurance Company.
No. CA 84 0414.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
Decree Amended On Rehearing March 31, 1986.
Writ Denied June 6, 1986.
*680 Paul Due' and Benjamin Guelfo, Charles Wm. Roberts, Baton Rouge, for plaintiff-appellant Linda Miles Stevenson.
Carolyn Perry and Carey T. Jones, Baton Rouge, for defendants-appellees The Bolton Co., Inc., et al.
Before COLE, CARTER, LANIER, CRAIN and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
The primary issue presented in this appeal is whether there was a causal connection between plaintiff's work accident and her subsequent disability. The primary issue presented in the answer to this appeal is whether the insurer's failure to commence compensation payments timely was justified.
Plaintiff, Linda Miles Stevenson, was injured on October 30, 1980 while acting in the course of her employment with The Bolton Company as a plasterer's apprentice on a renovation project at LSU. On that date plaintiff stepped into a hole on the second floor of the building being renovated and fell in a straddled position, with one leg in and one leg outside the hole. As a result of this accident, plaintiff sustained an injury to her lower back and hip.
Plaintiff immediately reported the accident to her employer, but declined an offer to see a physician on that date, stating she preferred to see a physician only if it became absolutely necessary. Plaintiff did not work the day after the accident, but returned to work the following Monday, Tuesday and Wednesday. On November 6, 1980, she decided to see the company doctor *681 because her pain had become unbearable. She thereafter was referred to several doctors and underwent various tests, treatments and therapy for her injury.
Plaintiff had been released to return to work by two physicians by the end of June 1981. However, she felt she was still unable to work because of the severity of the pain she continued to experience. At that time she was under the care of Dr. Kenneth Adatto, an orthopedic surgeon, whom she had first consulted on May 18, 1981. Even after being released by her other physicians, plaintiff continued treatment with Dr. Adatto which culminated in surgery on her lower back on September 18, 1981. In the course of this surgery Dr. Adatto discovered and corrected a foraminal decompression, which he concluded was the source of plaintiff's problems. Although plaintiff improved substantially after her surgery, the operation left her with a permanent 10% disability.
On the basis of her work injury, plaintiff received worker's compensation benefits from the date she stopped working until sometime in June of 1981. Upon the termination of her benefits plaintiff filed suit for worker's compensation, medical expenses, penalties and attorney fees against her former employer, the Bolton Company, Inc., and its insurer, Fireman's Fund Insurance Company. Trial of this matter commenced on October 18, 1982 and continued for three days. The trial was then recessed until November 19, 1982 at which time counsel made their arguments before the court, after which this matter was taken under advisement. On September 5, 1983 the court rendered judgment dismissing plaintiff's claim for additional worker's compensation benefits. The court also denied plaintiff's claim for the cost of medical services, hospitalization and surgery prescribed by Dr. Adatto. However, the court granted plaintiff's claim for penalties and attorney fees. Plaintiff perfected an appeal from this judgment. Defendants thereafter filed an answer to plaintiff's appeal seeking reversal of the award for statutory penalties and attorney fees, claiming it was unwarranted and excessive.
In order to recover worker's compensation benefits, the plaintiff must prove the following chain of causation; his employment caused an accident, the accident caused his injury and the injury caused his disability. La.R.S. 23:1031; Shatoska v. Intern. Grain Transfer, Inc., 430 So.2d 1255 (La.App. 1st Cir.1983). Although it is necessary for the plaintiff to prove his disability and its causal relation with his employment accident, it is not necessary he prove the exact cause of his disability. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985). In the absence of proof showing an intervening cause, an employee's disability is presumed to result from the accident, if he was in good health before the accident, but after the accident disabling symptoms appear and continuously manifest themselves, provided the medical evidence shows a reasonable possibility of a causal connection between the accident and the disability. Walton, supra; Robertson v. Scanio Produce, 449 So.2d 459 (La.1984). Once the plaintiff establishes the basic facts giving rise to this presumption, a heavy burden of proof is shifted to the defendant to prove by a preponderance of the evidence the absence of any correlation between the work injury and the employee's disability. Walton, supra; Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La. 1982). In Walton, supra, the Louisiana Supreme Court stated:
"Once the disabled employee establishes the presumption of a causal relationship, the party denying the existence of the presumed fact assumes both the burden of producing evidence and the burden of persuasion on the issue. * * * *

The effect of the presumption is not so slight and evanescent that it is spent and disappears upon the mere production of evidence by the adversary. It is a true presumption which has been created for policy reasons that are similar to and just as strong as those that underlie the compensation principle itself: the probability of the causal connection under *682 the circumstances which give rise to the presumption, the difficulty of proving causation with testimony by medical experts often sharply divided by differing schools of opinion, and the desirability of reducing the margin of error inherent in litigation as to a disabled employee, both because he has at stake an interest of transcending valuehis and his family's livelihoodand because those persons who enjoy the product of a business should ultimately bear the cost of injuries or deaths that are incident to the manufacture, preparation and distribution of the product." (Citations omitted.) (Emphasis added.)
A plaintiff in a worker's compensation case is entitled to this presumption of causation even where he was not entirely symptom free before the accident. Walton, supra. Because an employer takes his employee as he is, recovery is not precluded if the accident activated or precipitated disabling manifestations of the pre-existing condition. Id.
In the present case, it is undisputed plaintiff suffered a work related accident. In addition, defendants do not seriously contest the claim plaintiff now suffers from at least a 10% permanent disability. The decisive issue herein is whether there was a causal connection between plaintiff's work accident at LSU and her subsequent disability.
Plaintiff argues she is entitled to the aforementioned presumption of a causal connection between her work accident and her subsequent disability. In opposition to this claim, defendants made two basic arguments. First, they argue this presumption is not applicable because plaintiff was not in "good health" prior to the LSU accident, having had an extensive history of back problems and injuries similar in nature to the injury of which she now complains. Second, defendants maintain any disability suffered by plaintiff as the result of the LSU accident was temporary and had ended by June 23, 1981. They argue plaintiff's permanent disability was completely unrelated to her work accident, being the direct result of the unnecessary back surgery performed in September of 1981, after she had already recovered from any disability caused by her work accident at LSU.
One of the primary reasons for the trial court's judgment was its negative assessment of plaintiff's credibility. The court refused to accept plaintiff's testimony that she began experiencing disabling back pain shortly after the LSU accident, which continued until her back surgery.
It is well established a plaintiff in a worker's compensation case will be deemed a malingerer only upon clear and convincing evidence. Long v. Moses Motor Hotel, Inc., 460 So.2d 1156 (La.App. 2d Cir.1984); Caston v. Combined Insurance Company of America, 308 So.2d 287 (La.App. 1st Cir.1975). (The physicians who testified at trial indicated they had no reason to doubt the genuiness of plaintiff's complaints of pain.) In fact the record is devoid of any evidence which would support the conclusion plaintiff was a malingerer.
Further, our examination of the record also fails to support the reasons given by the trial court for its adverse credibility determination. For instance, in its written reasons the trial court stated one of plaintiff's co-workers testified plaintiff had complained of back pains from October 22, 1980, the date she returned to work following an automobile accident, through October 30, 1980, the date of the LSU accident. However, our review of the pertinent testimony reveals plaintiff's co-worker never testified plaintiff complained of back pains, but only that she complained of pain in her leg and knee.
We find the trial court also misconstrued the record when it stated plaintiff's testimony contained an admission she had lied while giving a pre-trial statement to an adjuster regarding prior injuries. The particular testimony in which plaintiff used the work "lied" must be taken in context. The colloquy in which this term occurred was a discussion of the fact plaintiff had given inaccurate information to an *683 adjuster as to which of her legs had been injured in a previous accident. Plaintiff candidly admitted her error, stating:
"... I probably did say that. It was on that tape, so, yes, I admit it. But like I say, we were in a heated argument beforehand, so I probably just forgot a few details but it was my left leg, my left knee, because that is what I went to the hospital for pain in the upper part of my neck because of...."
* * * * * *
"Q. But when you were taped, and this is the transcript, I show you the transcription of that tape that says it was my right leg.
A. Well, it wasn't in my right leg. If I said ...
Q. But that is what you said on the tape.
A. that, I lied, but I didn't lie deliberately. It was just a mistake." (Emphasis added.)
It is clear to this court plaintiff's use of the word "lied" was merely her characterization of having made a mistake and not of having intentionally told an untruth. This statement was taken on January 21, 1981, a considerable time after the accident had occurred and after medical treatment had been completed. Since this injury was insignificant, it is quite understandable plaintiff, at the time of the statement, could not recall which leg or knee was involved. As to plaintiff's credibility, we find no intentional misrepresentation on her part so as to warrant the conclusion she was being untruthful.[1] Finally, a review of the entire direct and cross-examination of plaintiff, including most of the questioning conducted by the trial court itself, simply does not support the conclusion plaintiff's testimony was untruthful or evasive.
For these reasons we are compelled, despite the great weight accorded to such matters, to reverse the credibility determination made by the trial court in the present case.
We now turn to the trial court's finding on the issue of causation. In support of their argument plaintiff was not entitled to the benefit of a presumption of causation because she was not in good health prior to the LSU accident, defendants direct the court's attention to several prior occasions when plaintiff sought medical treatment, allegedly complaining of back pain. The trial court accepted defendant's argument, finding plaintiff was not in good health prior to the LSU accident and thus was not entitled to a presumption of causation.
Although it is clear plaintiff had several accidents and medical problems prior to the LSU accident, it is far from clear whether any of these problems were related to her lower back. None of plaintiff's previous accidents or problems were similar in nature to the injury of which she now complains. The majority of these complaints were made in connection with gynecological problems. Further, plaintiff testified the type of pain she experienced on these occasions was entirely different from the pain she experienced following the LSU accident. Even if plaintiff had previously complained of lower back problems, the evidence does not establish any such problem was ever found prior to the LSU accident. To the contrary, our examination of the pre-accident medical evidence revealed a total absence of any evidence suggesting the existence of any type of lower back pathology, injury or disability.
However, even if it could be said plaintiff's condition was pre-existing, application of a presumption of causation is not precluded if the condition was precipitated into disabling manifestations as a result of the work accident. In the instant case, there is absolutely no evidence plaintiff was unable to perform her regular job duties, which included a large amount of *684 stooping, bending and climbing, prior to the LSU accident. Even though plaintiff was involved in a vehicular collision shortly before her LSU accident, the evidence does not establish she was unable to perform her regular duties upon her return to work following this automobile accident. Although one of plaintiff's co-workers testified plaintiff complained of pain upon her return to work, these complaints were specifically related to plaintiff's leg and knee, rather than her back. Given the fact we have found no evidence of any back pathology or disabling symptoms prior to the LSU accident, but commencing with the accident disabling symptoms have continuously been manifested, we conclude plaintiff is entitled to the presumption of a causal connection between the LSU accident and her subsequent disability.[2]
Plaintiff having proven the basic facts giving rise to this presumption, it became incumbent upon defendants to prove by a preponderance of the evidence the absence of any correlation between plaintiff's work injury and her disability. Walton, supra. Defendants attempted to carry this burden by showing plaintiff's disability actually resulted from unnecessary back surgery performed on September 18, 1981, rather than from the LSU accident. The trial court found plaintiff could be denied recovery based on its conclusion this surgery was unnecessary and broke the chain of causation and legal responsibility. However, Louisiana jurisprudence recognizes that if subsequent medical malpractice or excessive medical treatment occurs, the plaintiff is entitled to recover either in a tort case against the tortfeasor, or in a worker's compensation case against the employer and insurer. In both situations the tortfeasor and the employer and insurer have at their disposal the right to then sue the doctor either for recovery based on the extent to which the compensation responsibility or tort damages have been augmented owing to such malpractice or for reimbursement of the excessive cost for treatment. As stated by the court in Fruge v. Hub City Iron Works, Inc., 131 So.2d 593 (La.App. 3d Cir.1961), at p. 597:
"Further, when the medical treatment for the accidental injury is cause in fact of the final condition of the employee, such residual is in itself considered a result of the accident and therefore compensable, even where (which we of course we do not imply to be the case here) caused subsequent to the accident by negligent treatment. See Malone, Louisiana Workmen's Compensation (1951), § 233 (p. 282)."
See also, Thibodeaux v. Potomac Insurance Company, 201 So.2d 159 (La.App. 1st Cir.1967).
Logically, if a defendant in a personal injury or wrongful death tort suit cannot escape liability for subsequent medical malpractice suffered by the accident victim, by claiming such constituted a break in causation, a fortiori, a worker's compensation defendant should not, and cannot escape liability on this basis, particularly considering the liberal purpose and intent of coverage of worker's compensation to the benefit of the employee. In fact, even if plaintiff had received nothing more than diagnostic services, such medical expenses would still be recoverable, even though only for diagnostic purposes and even though the expenses were incurred after the last date of disability that was found to exist. Dyson v. Travelers Insurance Company, 256 So.2d 468 (La.App. 4th Cir. 1972); cf. also Sanders v. Western Casualty & Surety Company, 337 So.2d 286 (La. App. 2d Cir.1976).
Accordingly, it is not necessary for this court to decide whether the surgery in question was essential. The proper forum in which this issue should be decided would be in a suit by the worker's compensation insurer against the physician performing the surgery, after invoking the necessary *685 review panel procedure.[3] Plaintiff has admittedly suffered a permanent, partial disability of at least 10% as assigned by defendant's expert witness or 10% to 15% as assessed by plaintiff's expert witness. We find the trial court erred as a matter of law in failing to award plaintiff compensation benefits for her permanent partial disability, as well as the cost of medical services, hospitalization and surgery prescribed by Dr. Adatto.
The final issue for our consideration is the trial court's award of statutory penalties and attorney fees. In its answer to plaintiff's appeal, defendants assert this award was unwarranted and excessive. To the contrary, plaintiff maintains the $5,000.00 award for attorney fees was inadequate and should be raised to $10,000.00.
The purpose of the penalty and attorney fee provision of the worker's compensation law is to require the employer or the insurer to pay timely the benefits owed to the employee and to avoid the necessity of the employee retaining the services of an attorney to file suit. It has been recognized that even though the penalty statute speaks in terms of the requirement of 60 days notice, the absence of written notice to an employer of compensable injury cannot prevent collection of penalties where the employer had actual and immediate knowledge of the claimant's injury, and its refusal to pay benefits was not based on absence of notice. Saltalamacchia v. Strachan Shipping Corporation, 156 So.2d 291, (La.App. 4th Cir.1963), reversed on other grounds, 246 La. 91, 163 So.2d 548 (La.1964). In Lee v. National Tea Company, 378 So.2d 134 (La.App. 3d Cir. 1979), the Third Circuit held a self-insured employer, which was aware of the claimant's disability but failed to obtain any medical advice as to the cause of the disability, was liable for penalties and attorney's fees for failure to pay benefits.
Notice to the employer is construed as notice to the insurer for purposes of invoking penalties and attorney's fees in worker's compensation cases. La.R.S. 23:1162 C; Antoine v. Houston Fire and Casualty Company, 232 So.2d 588 (La. App. 3d Cir.1970). In order to invoke penalties and attorney fees it is not necessary that proof of loss be in writing or any other formal manner as long as the defendant has actual knowledge of the facts. Id.
Although plaintiff's disability began on October 30, 1980, the insurer did not begin compensation payments until January 22, 1981. Fireman's Fund's claims supervisor, Mr. Kinney, admitted the employer's first report of injury which was dated November 11, 1980, was received shortly thereafter. This form indicated disability began on the date of the accident and also stated plaintiff had an appointment with Dr. Dejean on that same November 11, 1980. Mr. Kinney stated no action was taken on this claim until January 8, 1981 because the report was misplaced for almost two months.
Mr. Kinney initially attempted to attribute the delay in commencing compensation to information in the file reflecting plaintiff's earlier automobile accident. However, he was later forced to admit information as to this automobile accident was not even in the file in the beginning and was not the basis for the delay in paying compensation. Mr. Kinney also admitted the confusion or miscommunication between plaintiff's employer and Fireman's Fund was not attributable to plaintiff in any way. Additionally, there was no medical report at the time justifying the delay.
In Whatley v. The Lummus Company, 243 So.2d 922 (La.App. 3d Cir.1970), penalties and attorney fees were held to be properly imposed where it took the insurer eight weeks to get the claimant's file returned from the home office. In Hale v. Courtney Equipment Company of Alexandria, *686 410 So.2d 1258 (La.App. 3d Cir. 1982), it was held that failure to satisfactorily explain why benefits were not timely paid resulted in proper imposition of a $5,000 attorney fee award. The misplacement of the employer's first report of injury for some eight weeks, resulting in a deprivation of weekly compensation to the plaintiff is equally egregious.
In this case, after the insurer finally commenced payment of the initial compensation benefits by check dated January 22, 1981 for 77 days compensation, it once again stopped paying weekly benefits and did not pay these back benefits until almost two months later on March 16, 1981. The only proffered justification for not paying compensation was an alleged return to work note by Dr. Dejean.
The law is clear that plaintiff has no requirement to make excessive "proofs of loss" or demands for payment for resumption of payments. In Chavis v. Maryland Casualty Company, 307 So.2d 663 (La. App. 3d Cir.1975), writ denied, 310 So.2d 854 (La.1975), penalties and attorney's fees were assessed even though no formal demand for resumption of payments was made. The court stated:
"To interpret the law otherwise would permit an insurer to discontinue payments repeatedly, force the employee after discontinuance to make demand and then wait nearly sixty days thereafter to bring payments up to date or force the plaintiff to litigate."
To the same effect, see Maricle v. Cloud, 341 So.2d 29 (La.App. 3d Cir.1976).
Regardless of the report of Dr. Dejean, when Fireman's Fund only a few days later received the report from Dr. Bolton, dated January 23, 1981, it was put on notice that plaintiff was still under active medical treatment and was entitled to continued compensation benefits. The contention Fireman's Fund did not know plaintiff had not returned to work is refuted in the very first portion of Dr. Bolton's aforementioned January 23, 1981 report, wherein Dr. Bolton states: "She has not returned to work since the accident." From this report it is clear plaintiff had been prescribed two weeks of extensive physical therapy by Dr. Bolton, who diagnosed a lumbosacral strain and possible lumbar disc.
An insurer is required to make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated. Johnson v. Ins. Co. of N. America, 454 So.2d 1113 (La.1984). If, subsequent to an initial optimistic report, an insurer received medical information indicating continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits. Johnson, supra; see also, West v. Belden Corp., 396 So.2d 1004 (La.App. 3d Cir.1981), writ denied, 401 So.2d 976 (La.1981). Penalties and attorney's fees are properly awarded when an insurer discontinues compensation benefits without probable cause. Johnson, supra.
Mr. Kinney admitted no one working for Fireman's Fund or plaintiff's employer made any attempt to contact Dr. Bolton to inquire whether or not he felt plaintiff was disabled. Dr. Bolton testified at trial that plaintiff was indeed disabled from work when he saw her initially on January 23, 1981 and thereafter. Also, there was nothing in Dr. Bolton's second report to Fireman's Fund, dated February 20, 1981, which in any way would justify continued nonpayment of compensation benefits. To the contrary, this report confirmed plaintiff reported no improvement in her symptoms and was accordingly referred by Dr. Bolton to a neurologist.
Defendant's suggestion that penalties and attorney fees are not warranted in this case because plaintiff did not communicate with her employer or Fireman's Fund, so that neither was advised she was not working until Fireman's Fund received Dr. Dejeans's report on January 8th, 1981, is totally without merit. Plaintiff's employer was well aware why she was not back at work, since it had sent her to see Dr. Dejean on November 11, 1980. Thus it then knew or certainly could have found *687 out Dr. Dejean was treating plaintiff until the time Dr. Dejean referred her to Dr. Bolton. As previously stated, notice to the employer is construed as notice to the insurer for purposes of penalties and attorney's fees. Further, plaintiff had no means of communicating with Fireman's Fund during the initial deprivation of worker's compensation benefits, since she was unaware Fireman's Fund was her employer's compensation insurer.
The trial court was correct in awarding statutory penalties and attorney's fees predicated on not one but two inexcusable refusals to pay plaintiff timely the compensation benefits to which she was obviously entitled. Further, we agree with plaintiff's argument the attorney fees award was inadequate. Trial of this matter took three full days, as well as an additional day for oral argument before the trial court. In addition, plaintiff was required to pursue this matter by appeal. Under the circumstances present, we find the award for attorney fees should be increased to $7,500.00.

"DECREE
The portion of the judgment appealed from which denied plaintiff's claims for additional compensation benefits and medical expenses is reversed, and judgment is hereby rendered awarding plaintiff permanent partial compensation for a period of 450 weeks, less compensation previously paid, each weekly benefit to bear legal interest from its respective due date, until paid. Judgment is further rendered for all unpaid medical expenses claimed by plaintiff, same to bear legal interest from date incurred, until paid. The portion of the trial court judgment awarding penalties and attorney fees is hereby amended to increase the award of attorney fees from $5,000 to $7,500, the $5,000 portion awarded by the trial court is to bear legal interest from the date of the trial court judgment, until paid; the $2,500 portion awarded by this court is to bear legal interest from the date of our judgment, until paid; and, further, the 12% penalty shall bear legal interest from the date of judicial demand, until paid."
REVERSED IN PART; AMENDED AND, AS AMENDED, AFFIRMED IN PART.
CARTER, J., dissents and assigns reasons.
LANIER, J., dissents for the reasons assigned by CARTER, J.
CARTER and LANIER, Judges, dissenting.
CARTER, Judge.
We dissent from the majority opinion because the majority has overlooked the fact that a reviewing court must give great weight to the factual conclusions arrived at by the trier of fact and that reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel that its own evaluations and inferences are reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973); Lucido v. Aetna Life and Cas. Co., 411 So.2d 608 (La.App. 1st Cir.1982). As noted by this court in Lucido v. Aetna Life and Cas. Co., supra at 610, "the reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared to the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between respective courts."
In the case sub judice, the majority correctly points out that the issues presented on appeal are whether the work-related accident caused the plaintiff's injuries and whether the worker's compensation carrier was arbitrary, capricious or without probable cause in its denial of worker's compensation benefits.
The following facts gave rise to the instant suit. On October 30, 1980, plaintiff was involved in the renovation of the Coates Laboratory at LSU. On that date, plaintiff, while in the course and scope of *688 her employment as a plasterer's apprentice, stepped into a hole in the second floor of the building and allegedly sustained back injuries.
Prior to the accident in the case sub judice, plaintiff had an extensive medical history involving complaints of pain and injury to her back. These complaints of pain and injury were documented from 1977 to a month before the accident in the instant case and involved health problems, numerous automobile accidents, and a fight. On January 16, 1977, plaintiff went to Earl K. Long Memorial Hospital (EKL) complaining of low back and abdominal pain. Plaintiff also went to EKL on March 9, 1977, and complained of lower back pain and abdominal cramps. On April 12, 1977, plaintiff again went to EKL where she was diagnosed as having chronic pelvic pain, memorrhagia, urinary tract infection and vaginal cuff infection. An abdominal hysterectomy was performed by doctors at EKL on April 19, 1977. On November 26, 1978, plaintiff was involved in an automobile accident. She sought treatment at EKL and complained of pain in her back, leg, and stomach. Again on February 28, 1979, plaintiff went to EKL and reported pain in her low back and lower abdomen. These back pains were described as dull, aching pains and were located in the lumbosacral area. The hospital records at EKL reflect that on May 16, 1979, plaintiff went to the hospital after a fight with her brother and complained of pains in her chest, neck, and back with pain going down her legs. In November of 1979, plaintiff was involved in yet another automobile accident. Then on September 21, 1980, plaintiff was involved in another automobile accident. She was taken to Our Lady of the Lake Medical Center on September 25, 1980, and complained of pain in her left side, hip, knee, and ankle. As a result of the September, 1980, automobile accident, plaintiff saw Dr. James Halley on October 2, 1980. Dr. Halley diagnosed plaintiff's complaints of pain in the lumbosacral region and other areas as a strain of the cervical and lumbar musclature. Then on October 10, 1980, plaintiff was examined by Dr. Mencer and complained of pain on the left side of her neck, headaches, and pain in her left knee and ankle.
Following plaintiff's work-related accident on October 30, 1980, plaintiff was seen by numerous physicians. Plaintiff was initially seen by Dr. F.A. DeJean, a general practitioner, who treated plaintiff from November 6, 1980, until January 12, 1981. Upon examination of plaintiff on November 6, 1980, Dr. DeJean noted that plaintiff had contusions to the right side of her buttocks, her right leg, and her right ankle, but no muscle spasm. The x-rays taken were negative for any fracture or dislocation. On November 17, 1980, plaintiff complained to Dr. DeJean of continuing pain in her left thigh and buttocks. Dr. DeJean conducted straight leg raising tests, which plaintiff indicated caused pain. Dr. DeJean ordered additional x-rays of plaintiff's spine and left leg. Although the x-rays showed that plaintiff had a zone of sclerosis in the distal femur, they were otherwise unremarkable. Plaintiff continued seeing Dr. DeJean until January 11, 1981, with similar complaints, and Dr. DeJean prescribed conservative treatment, consisting of mild muscle relaxers and whirlpool treatments, and suggested that plaintiff return to work on January 13, 1981.[1]
On January 23, 1981, plaintiff was seen by Dr. Richard Bolton, an orthopedic surgeon. Plaintiff complained of pain in her left lower back with radiation of pain into her left posterior thigh and leg, with intermittent numbness in her lower left leg and ankle. Dr. Bolton found that plaintiff had good extension and lateral bending to each side, that she "heel and toe" walked well, and that there was no atrophy of the musclature in the lower extremities. However, Dr. Bolton did find that plaintiff complained of pain in the left posterior hip with straight leg raising to 70° to the left. Dr. *689 Bolton diagnosed possible lumbosacral strain and possible lumbar disc and referred plaintiff to Dr. John Clifford, a neurosurgeon.
On February 26, 1981, Dr. Clifford examined plaintiff. His examination revealed no objective explanation for plaintiff's pain. He recommended that plaintiff have additional x-rays and an EMG performed. The x-rays were normal, and the EMG indicated mild radiculpathy on the left. Dr. Clifford then suggested that a myelogram be performed. The results of the myelogram were normal, and Dr. Clifford determined that plaintiff did not have a ruptured lumbar disc. He diagnosed low back strain and found no evidence to substantiate any significant abnormality in her back.
On May 18, 1981, plaintiff's attorney referred her to Dr. Kenneth Adatto, an orthopedic surgeon. In his initial examination, Dr. Adatto found evidence that something was irritating the nerves in plaintiff's lumbar spine. Dr. Adatto found that plaintiff had muscle spasms in her lower back, had a limited range of motion, had weakness of the great toe as well as muscle atrophy, and had a positive straight leg raising test. At that time, he also reviewed the results of the EMG and the myelogram performed at Dr. Clifford's request.
On July 24, 1981, Dr. Adatto requested that a radiculogram and nerve block be performed. The radiculogram results were normal, and plaintiff had some relief of pain with the blocking.
On September 15, 1981, plaintiff was admitted to St. Charles General Hospital in New Orleans. While in the hospital, the lumbar myelogram was repeated, and a discogram was performed. The results of the myelogram were normal, and the discogram showed no evidence of extravasation or acceptance of an abnormally large volume of contract material. On September 18, 1981, Dr. Adatto performed surgery on plaintiff, and her post-operative report noted "relative spinal stenosis and foramen at the L5-S1 was quite tight." Dr. Adatto testified that he widely opened the foramen at this level to free the nerve. At the L4-5 level, Dr. Adatto testified that he had the same finding and followed the same procedure of foraminal decompression and laminotomy to relieve the pressure.
During the course of plaintiff's treatment by Dr. Adatto, but prior to plaintiff's surgery, plaintiff was examined on May 26, 1981, by Dr. Steven M. Wilson, an orthopedic surgeon. Dr. Wilson's examination revealed no swelling or inflammation in plaintiff's lower back. Additionally, plaintiff exhibited a good range of motion in all joints, and her lower extremities failed to show muscle atrophy. Dr. Wilson's diagnosis was old injury to low back and left ankle. He found no objective evidence to explain plaintiff's complaint of severe pain.
Subsequent to plaintiff's surgery, she was examined by Dr. Robert E. Hanchey, a neurosurgeon. Dr. Hanchey also reviewed the tests which had previously been performed. Dr. Hanchey's impression was that plaintiff's examination lacked overt objective evidence to substantiate any significant ongoing difficulty.
On July 23, 1981, plaintiff filed suit against defendants, The Bolton Company, Inc. and Fireman's Fund Insurance Company, seeking worker's compensation benefits, medical expenses, and statutory penalties. Subsequent to trial on the merits, the trial judge, for written reasons assigned, rendered judgment in favor of defendants, denying plaintiff's claim for additional compensation and medical benefits, and granted plaintiff's claim for penalties and attorney's fees for defendants' arbitrary conduct at the inception of the claim.

Did Plaintiff's Accident Cause Her Injury?
The plaintiff-employee in a worker's compensation accident has the burden of establishing by a preponderance of the evidence the causal connection between his disability and the accident. In other words, the plaintiff must prove by a preponderance of evidence that the injury sustained was caused by the accident. Robertson v. Scanio Produce, 449 So.2d 459 (La.1984); *690 Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982); Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982); West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Bridgewater v. Crown Zellerbach, 449 So.2d 515 (La.App. 1st Cir.1984); Shatoska v. Intern. Grain Transfer, Inc., 430 So.2d 1255 (La.App. 1st Cir.1983).
However, it is not necessary to determine the exact cause of the disability for the employee to recover; the employee need show only that the work-related accident caused the disability. Hammond v. Fidelity & Cas. Co. of New York, supra. Furthermore, the medical testimony must be weighed in light of other credible evidence of a nonmedical character, such as sequence of symptoms or events in order to judicially determine probability. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982).
In the case sub judice, plaintiff contends that her work-related accident caused back injuries, resulting in surgery and permanent disability.
At trial, plaintiff relied primarily on her own testimony that the onset of her continuous pain coincided with her undisputed work-related accident at LSU. In his written reasons for judgment, the trial judge stated:
Stevenson's testimony is fraught with prior inconsistent statements, testimony at trial contrary to medical documentation introduced into evidence, failure to answer fully and truthfully answers to interrogatories, an inability to recall prior accidents and traumas, inaccurate and incomplete medical histories related to physicians, as well as the admission while testifying in Court that she had lied while talking to the Fireman's Fund adjustor regarding the nature of prior injuries she had sustained, because she was `mad' at the adjustor.
This Court can and often does overlook inconsistencies, inaccuracies, and contradictions as being honest mistakes or forgetfulness. However, in this case the Court finds plaintiff's interest in the outcome of the case is a significant factor in determining the credibility of her testimony. Considering all the factors involved in this case, the issue of creditibility (sic) is resolved against the plaintiff. The conflicting nature of her testimony, the testimony of other witnesses and the objective evidence supports this result.
Plaintiff also relied on the testimony of Dr. Adatto to support her allegations that the work-related accident caused her injuries. At trial, Dr. Adatto testified that ordinarily it is difficult for a physician to determine where and when an injury occurred; therefore, he uses the history given by the patient to determine the cause of the injury. Plaintiff's history to Dr. Adatto mentioned only her work-related accident on October 30, 1980, and failed to disclose any prior injuries or complaints, including the numerous complaints of back and leg pain to EKL as a result of female and urinary disorders, a fight with her brother and various automobile accidents.
An analysis of the medical evidence reveals that neither Dr. DeJean, Dr. Bolton, Dr. Clifford or Dr. Wilson could find any reasons for plaintiff's continual complaint of pain.
Plaintiff also contends that she is entitled to the presumption that the work-related accident caused her injuries.
Absent proof of an intervening cause, a claimant's disability is presumed to have resulted from an accident, if before the accident, the injured employee was in good health, and symptoms of the disabling condition commenced at the time of the accident and continuously manifested themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Robertson v. Scanio Produce, supra; Hammond v. Fidelity & Cas. Co. of New York, supra; Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977).
In the case sub judice, the trial judge determined that plaintiff was not entitled to the presumption and stated:

*691 In the case before the Court, the evidence shows plaintiff was not in good health before her work related accident. The medical evidence clearly establishes plaintiff's long history of back and leg pain related to numerous traumas, as well as to female and urinary disorders. Approximately one month prior to the accident sued upon, plaintiff was involved in an automobile accident in which she injured her neck, left ankle, and leg. On October 2, 1980, she complained of neck and back pain with pain radiating down her left leg to Dr. James Haley, an orthopedic surgeon. (D-7). Clifford Bradford a co-worker, testified that Stevenson complained of back pains from October 22, 1980, the date she returned to work following the automobile accident, through October 30, 1980, the date of her work related accident at LSU.
The factual findings of the district court as to work-related disability are entitled to great weight on appellate review and are not to be disturbed absent manifest error. Martin v. H.B. Zachry Co., supra; Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979); Bridgewater v. Crown Zellerbach, supra; Donald v. Big Three Industries, Inc., 426 So.2d 257 (La.App. 1st Cir.1983), writ denied 429 So.2d 157 (La. 1983); Lanieux v. Iberville Services, Inc., 391 So.2d 1282 (La.App. 1st Cir.1980), writ denied 394 So.2d 1243 (La.1980).
The trial judge found that plaintiff's testimony was unreliable and that she had failed to establish that her work-related accident had caused her injuries. The trial judge determined that plaintiff had been involved in accidents both before and after the one which is the basis for the instant case and that no medical testimony based on an accurate history relate plaintiff's current complaints to her work-related accident. The court found that plaintiff had sustained only minor injuries (a lumbosacral strain) as a result of her work-related accident from which she sufficiently recovered at the time her worker's compensation benefits were terminated. The majority disregards the weight the trial judge's findings should be given and erroneously reverses his findings.
Furthermore, although the majority finds as fact that Stevenson's accident required corrective surgery by Dr. Adatto and that the combined effects of the accident and subsequent surgery caused permanent, compensable disability, they proceed additionally to hold in dictum that "a worker's compensation defendant should not, and cannot escape liability" "for subsequent medical malpractice suffered by the accident victim, by claiming such constituted a break in causation." The majority asserts this is the rule in tort cases and, therefore, by analogy, must also be the rule in worker's compensation cases. The majority then reasons that "it is not necessary for this court to decide whether the surgery in question was essential" and concludes that "the trial court erred as a matter of law in failing to award plaintiff compensation for her permanent partial disability, as well as the cost of medical services, hospitalization and surgery prescribed by Dr. Adatto." (Emphasis added).
In addition to being unnecessary to the opinion, this dictum holding would be wrong as a matter of law if applied to the facts found by the trial court herein. The trial court held that as of June 12, 1981, when compensation was terminated, Stevenson's injury was cured with no residual disability. This obviously implies that, if she still had a medical problem, it was not causally related to the Bolton accident or that she did not have a medical problem. In either instance, the surgery performed by Dr. Adatto on September 18, 1981, was not causally related to an incident which occurred during the course of employment and/or did not arise out of the employment. We agree that where a worker is injured on the job, seeks or is given medical treatment for his work-related injury and his disability is prolonged or created by medical malpractice in treating the work-related injury, that there is worker's compensation coverage. Owens v. Neeb Kearney & Company, 181 So.2d 301 (La.App. 4th Cir.1965), application denied, 248 La. 1099, 184 So.2d 24 (1966); Gay v. Stone & Webster *692 Engineering Corporation, 191 So. 745 (La. App. 1st Cir.1939); Smith v. Brown Paper Mill Co., 152 So. 700 (La.App. 2nd Cir. 1934). We would also agree that if a work-related medical condition was a contributory factor with a non-work-related medical malpractice to a worker's disability that there would be compensation coverage. Woodward v. Kansas City Bridge Co., 3 So.2d 221 (La.App. 1st Cir.1941). However, these two situations are factually distinguishable from the facts as found by the trial court. Cf. Ford v. Louisiana & A. Ry. Co., 196 So. 403 (La.App. 2nd Cir.1940). The case of Fruge v. Hub City Iron Works, Inc., 131 So.2d 593 (La.App. 3rd Cir.1961) cited by the majority is not factually applicable and the quote utilized from it is dictum. The author of Fruge (Judge Tate) qualified the Fruge quote used by the majority in a dissenting opinion in Frame v. Majors, 224 So.2d 65, 71 (La.App. 3rd Cir.1969), writ refused, 254 La. 783, 226 So.2d 772 (1969) as follows:
It is of course unquestioned that a disability or death caused by medical treatment is regarded as resulting from the work-accident, if the medical treatment was occasioned by a condition caused by the accident at work.

(Emphasis added).
We believe the law to be correctly set forth in W. Malone & H. Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation Law and Practice § 363, pp 136-137 (1980) as follows:

It also remains true, at least in theory, that compensation is not to be awarded unless the incident occurred during the course of employment and arose out of it. If the injury occurred outside working hours and at some place removed from the employer's premises, there is no reason why the employee should be denied recovery in tort if he was injured through the fault of the employer or his agents, and our courts have so held. But in practice, as a result of the expansion of recovery noticed earlier in this section, there appear to be very few situations in which the employer or his employees were at fault and where either the injured employee was clearly outside the course of his employment or the injury did not arise out of the employment.
It follows from the above that if the employer is not liable in tort for the original injury, but rather must respond in compensation, he is likewise not liable for the aggravation of the injury by careless medical treatment, even though the offending physician might be regarded as the servant of the employer. The compensation remedy would, of course, include the possibility of recovery for the combined result of the original injury and subsequent aggravation by careless medical treatment.
(Emphasis added).
(Footnotes deleted).
We do not agree that the law of torts on this issue can be applied to a worker's compensation case by analogy because the basic policy reasons behind tort and compensation law are substantially different. Compare F. Stone, 12 Civil Law Treatise, Tort Doctrine § 59, p 82 (1977) with W. Malone § H. Johnson, supra §§ 1-13 and 31-38.
A thorough review of the record convinces us that the trial court correctly determined that plaintiff did not carry her burden of proof that the injury sustained while performing the work for The Bolton Company, Inc. at LSU was the cause of her continued pain. The majority clearly discards the manifest error rule and erroneously abrogates the trial judge's factual findings and determination of credibility. It is obviously clear that there was sufficient evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnished a reasonable factual basis for the finding that the plaintiff was not disabled as a result of her work-related accident.
Additionally, in numerous instances the Louisiana Supreme Court has reversed the courts of appeal for substituting its own judgment for that of the trial court on *693 factual issues. See Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977) and Billiot v. Bourg, 338 So.2d 1148 (La. 1976).

STATUTORY PENALTIES
We also dissent from the majority's affirmation and increase of the trial court's award of statutory penalties.
If failure to pay worker's compensation benefits is found to be arbitrary, capricious or without probable case, penalties and attorney's fees may be awarded. LSA-R.S. 22:658; Guillory v. U.S. Fidelity & Guar. Ins. Co., 420 So.2d 119 (La.1982). In order to subject an insurer to penalties and attorney's fees, a worker's compensation plaintiff must prove that the company arbitrarily, capriciously or without probable cause failed to make timely payment after receipt of both a demand therefor and satisfactory proof of loss. Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982); Moore v. St. Paul Fire & Marine Ins. Co., 251 La. 201, 203 So.2d 548 (1967).
The issue of whether the refusal to pay compensation benefits was arbitrary and capricious is a factual determination which must be determined upon the merits of each case. Moreau v. Houston General Ins. Co., 386 So.2d 151 (La.App. 3rd Cir. 1980). A factual determination by the trial court should not be reversed unless the trial court was clearly wrong from an examination of the record as a whole. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
In the case sub judice, the trial judge found that defendant acted arbitrarily, capriciously, and without probable cause at the inception of plaintiff's claim for compensation benefits and awarded plaintiff penalties of twelve percent of the late payments and $5,000.00 attorney's fees.
Stevenson was injured toward the end of the work day on Thursday, October 30, 1980. Stevenson reported her injury to Eunice Juneau, her employer's personnel manager. Juneau asked Stevenson if she wished to see a doctor, and Stevenson responded that she would not work on Friday, October 31, 1980, would rest over the weekend and would return to work on Monday, November 3, 1980. Stevenson did not work on November 3, 1980, but did work on November 4 and 5, 1980. On Thursday, November 6, 1980, Stevenson called Juneau and advised she wished to see a doctor. Juneau made an appointment for Stevenson to see Dr. F.A. DeJean that same day.
Dr. DeJean examined Stevenson and found contusions to the right side of the buttocks, right leg and right ankle. No muscle spasms were noted. Stevenson was sent to Drs. Geheber and Woolfolk for x-rays which were negative for fracture or dislocation.
Stevenson returned to work on Friday, November 7, 1980, and Monday, November 10, 1980. On Tuesday, November 11, 1980, Stevenson returned to see Dr. DeJean complaining of pain in her left thigh and buttocks. She was again referred to Dr. Geheber for x-rays which showed a zone of sclerosis in her distal femur but were otherwise unremarkable. Also, on November 11, 1980, The Bolton Company sent an accident report to Fireman's Fund on Stevenson's accident. The accident report states the period of disability as October 30, 1980, to November 11, 1980, and states that Stevenson has an appointment with Dr. DeJean on November 11, 1980. This report was received by Fireman's Fund on November 13, 1980. Stevenson did not return to work after November 11, 1980.
Fireman's Fund paid a $139.00 bill to Drs. Geheber, Woolfolk and Jenkins on December 22, 1980.
Stevenson had subsequent visits to Dr. DeJean on November 17 and 24, 1980, December 1, 15 and 29, 1980, and January 5 and 12, 1981. On January 12, 1981, Dr. DeJean discharged Stevenson to return to work. Dr. DeJean sent a report dated January 6, 1981, to Fireman's Fund. This report was received by Fireman's Fund on January 13, 1981.
The Fireman's Fund case file indicates an unsuccessful attempt was made to contact Stevenson on January 13, 1981, and on *694 January 21, 1981, Stevenson called Fireman's Fund and advised she was not working and needed compensation. By check dated January 22, 1981, Fireman's Fund paid Stevenson compensation benefits of $163 per week for 77 days (November 7, 1980, through January 23, 1981), a total of $1,792.99.
Stevenson was examined by Dr. Richard L. Bolton, an orthopedist, on January 23, 1981. Stevenson complained of pain "in her lower back with radiation into her left posterior thigh and leg," numbness in the left lower leg and ankle and "giving way of the left leg." Stevenson denied "any previous history of back difficulty." (See, however, the report of Dr. James F. Halley, dated October 2, 1980, Exhibit D-7, wherein Stevenson gave a history of an automobile accident and "pain in the neck and back and noted that there was pain radiating down the left leg to the region of the knee.") Dr. Bolton was of the opinion that Stevenson "most probably has residuals of a lumbosacral strain and possible lumbar disc." Dr. Bolton so advised Fireman's Fund in a letter dated January 23, 1981.
By identical letters dated January 29, 1981, Arthur J. Boudreaux, III advised The Bolton Company and Fireman's Fund that he was the attorney for Stevenson and made demand for compensation benefits. By letter dated February 5, 1981, Fireman's Fund responded to Boudreaux's letter and advised him that Dr. DeJean had released Stevenson to return to work on January 13, 1981, compensation benefits had been paid through January 23, 1981, and that Fireman's Fund was trying to obtain additional medicals to "make a determination as to whether or not your client is due any further temporary total benefits." Boudreaux responded by letter dated February 17, 1981, that Stevenson had seen Dr. Jackson (who is associated with Dr. Bolton), was put on physical therapy and was still disabled. Boudreaux demanded compensation from January 23, 1981, until paid.
By letter dated February 20, 1981, Dr. Bolton advised Fireman's Fund that Stevenson showed no improvement in her symptoms. His examination revealed no evidence of any neurological deficit, and he referred her to a neurosurgeon for evaluation.
By letter dated February 26, 1981, (stamped received March 9, 1981), Dr. John R. Clifford, a neurosurgeon, advised Fireman's Fund he examined Stevenson on referral from Dr. Bolton. He indicated that her symptom complex "may well represent that of a ruptured lumbar disc." He recommended x-rays of the lumbar spine, an EMG and, pending the outcome of these diagnostic procedures, consideration of a myelogram.
By letter dated March 4, 1981, Boudreaux made demand on Fireman's Fund to bring compensation payments up-to-date. On March 5, 1981, Stevenson called Fireman's Fund about her compensation payments. By check dated March 16, 1981, Fireman's Fund paid Stevenson compensation benefits of $1,304.00 for the period of January 24, 1981, to March 20, 1981. Regular compensation payments were apparently made thereafter.
By letter dated March 27, 1981, Dr. Clifford advised Fireman's Fund that an EMG had been performed on Stevenson, and the results were consistent with L4-5 radiculopathy on the left side. He recommended that a myelogram be performed. The Fireman's Fund's records indicate that approval was given to proceed on April 1, 1981. Stevenson was admitted to the Baton Rouge General Hospital on April 12, 1981. A lumbar myelogram was performed, and she was treated with traction and physical thereapy. The myelogram was "within normal limits." She was discharged from the hospital on April 18, 1981.
By letter dated April 24, 1981, Dr. Clifford advised Fireman's Fund of the result of the myelogram and expressed the opinion that she did not have a ruptured disc. He advised that "this lady is going to have to be pushed to go back to work, but I think if she were so motivated that this would be possible." He indicated he would *695 see Stevenson in two weeks and would report thereafter.
The Fireman's Fund records indicate that Stevenson called on April 29, 1981, and advised she was no longer represented by Boudreaux. On May 13, 1981, Boudreaux called and verified this.
By letter dated April 29, 1981, Dr. Clifford gave the following opinion to Fireman's Fund:
I suspect that Mrs. Stevenson had an initial low back strain and the symptoms to a large extent have subsided. She has now fallen to a chronic pain type of behavioral pattern with no hard evidence to substantiate any significant abnormality in her back. The EMG changes, I suspect, are long-standing and do not represent anything on an acute basis.
At this point in time, I feel it would be in the patient's best interest that she consider returning to her former occupation, but I would note that because of the length of time that she has been off work, that there may be some difficulty in doing this. I do feel it would be in the patient's best interest for her to become employed again.
By letter dated June 2, 1981, Dr. Stephen M. Wilson, an orthopedist, advised Fireman's Fund he examined Stevenson on May 26, 1981. Dr. Wilson reported as follows:
My diagnosis at that time was old injury to the lower back and left ankle. I can find nothing on physical examination to make me understand why this patient has continued to complain of such severe pain. I reviewed the records of the previous orthopedic surgeon who had treated her and the neurosurgeon and I feel at this time that this patient should try to return to all of her previous activities. She should certainly try to lose weight. I told her that if I could be of any further benefit that she should return to this office for a follow-up visit.
By letter dated June 8, 1981, Stevenson's present attorneys advised Fireman's Fund of their representation.
On June 10, 1981, Fireman's Fund determined to terminate compensation payments effective June 12, 1981, based on the medical reports of Drs. DeJean, Bolton, Clifford and Wilson. For the period of November 7, 1980, through June 12, 1981, compensation benefits of $5,052.99 were paid and medical bills of $3,329.53 were paid.
This suit was filed on July 23, 1981.
The trial court found that "the initial compensation was not timely paid." The court then applied the penalty provisions of LSA-R.S. 23:1201.2 liberally in favor of Stevenson and granted statutory penalties of 12% of $3,096.99 (compensation payments from November 7, 1980, to March 20, 1981), or $371.63, and attorney's fees of $5,000. Stevenson contends the attorney's fees should be increased to $10,000.00 on appeal. The defendants contend it was error to award statutory penalties and, in the alternative, contend the award of a $5,000.00 fee is excessive. The majority affirms the award of statutory penalties and finds the $5,000.00 fee inadequate and increases it to $7,500.00.
Initially, we note the trial court applied the wrong penal statute. LSA-R.S. 23:1201.2 was applicable to an employer only when he is not adequately covered by insurance. Shatoska, 430 So.2d at 1262, n. 5 and the cases cited therein; Wainwright v. Files Timber Company, Inc., 404 So.2d 1287 (La.App. 2nd Cir.1981). LSA-R.S. 22:658 was the applicable statute for worker's compensation insurers at all times pertinent herein.[2]Thibodeaux v. Aetna Cas. *696 and Sur. Co., 454 So.2d 1141, 1147 n. 4 (La.App. 1st Cir.1984). LSA-R.S. 22:658 provided, in pertinent part, as follows:
All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. (Emphasis added).
LSA-R.S. 22:658 is a penal statute and must be strictly construed. A party claiming statutory penalties under LSA-R.S. 22:658 has the burden of proving the essential elements of the statute to establish his entitlement. The sanctions of LSA-R.S. 22:658 can only be imposed when the claimant proves facts which negate probable cause for nonpayment. McDill v. Utica Mut. Ins. Co., 475 So.2d 1085 (La.1985); Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983). Where there is a serious defense presented in good faith, the assessment of statutory penalties is not appropriate. Shatoska, 430 So.2d at 1262. A review of LSA-R.S. 22:658 shows Stevenson had the burden of proving the following:
(1) the insurer received a satisfactory proof of loss;
(2) demand for payment was made;
(3) the insurer failed to pay within 60 days after receipt of a satisfactory proof of loss and demand for payment; and
(4) the failure to pay was arbitrary, capricious or without probable cause.
A satisfactory proof of loss is one which fully apprises the insurer of the insured's claim. McDill, 475 So.2d at 1089; Hart, 437 So.2d at 828. The accident report sent by The Bolton Company to Fireman's Fund on November 11, 1980, does not fully apprise of Stevenson's injuries and disability. The report merely states Stevenson injured her "leg & backside." It does not state if these injuries caused permanent, partial or schedule disability or if the disability is temporary or permanent. Sufficient information was not received by Fireman's Fund until it received Dr. DeJean's medical report on January 13, 1981. See the discussion in Hart, 437 So.2d at 828-829. Compensation benefit payments were commenced within sixty days of that date.
Proof of a demand for payment is essential to the imposition of statutory penalties. Moore v. St. Paul Fire and Marine Insurance Co., 203 So.2d at 552. Notice of disability (proof of loss) and admission of liability do not obviate the necessity of proving demand for payment. Byrd v. Highland's Insurance Company, 319 So.2d 498 (La.App. 4th Cir.1975), writ denied, 323 So.2d 136 (La.1975); Antoine v. Houston Fire and Casualty Company, 232 So.2d 588 (La.App. 3rd Cir.1970). In Wilkins v. Allstate Insurance Company, 173 So.2d 199, 202 (La.App. 1st Cir.1965), this court sitting en banc observed as follows:
Demand, when required may be either written or oral so long as it be shown to have fully informed and apprised the insurer of the insured's intention to press *697 for or demand payment of the claim submitted. It is significant that the statute in question does not require written demand. What constitutes demand, however, is to be determined in the light of the facts and circumstances of each individual case. Nevertheless, as indicated by the cited jurisprudence, demand is an indispensable prerequisite to recovery and such demand must be separate and apart from and something over and above the mere submission of proof of loss (whether on insurer's forms or otherwise) supported by medical bills or invoices, statements or estimates of damage. If the insured submits proof of loss followed by mere silence and inaction on the part of the insurer (unaccompanied by denial or refusal to pay), there can be no incurrence of penalties until such time as demand is made and followed by the insurer's failure to pay within sixty days of date thereof. The foregoing, however, is without application in the event the record discloses circumstances tantamount to the insurer's waiver of demand. (Emphasis added).
The demand must fully inform (apprise) the insurer of the insured's intention to claim payment under the policy. Abraham v. Hanover Ins. Co., 420 So.2d 526 (La. App. 2nd Cir.1982); Blackwell v. Daigle, 317 So.2d 18 (La.App. 3rd Cir.1975), writ denied, 320 So.2d 563 (La.1975). The demand letter of Stevenson's attorney of January 29, 1981, complied with the requirements of LSA-R.S. 22:658. Henley v. Sullivan, 391 So.2d 838 (La.1980); Moore v. Millers Mut. Fire Ins. Co. of Texas, 406 So.2d 708 (La.App. 2nd Cir.1981), writ denied, 410 So.2d 1132 (La.1982). However, compensation for November 7, 1980, through January 23, 1981, were paid by check dated January 22, 1981 (prior to the demand). In addition, compensation payments for January 24, 1981, through March 20, 1981, were made by check dated March 16, 1981 (within sixty days of the demand letter). Fireman's Fund's records show a verbal request by Stevenson for payment of compensation on January 21, 1981. Assuming this request fully informed Fireman's Fund, all payments were made within 60 days of it. Cf. American Motorists Insurance Company v. Wilson, 256 So.2d 813 (La.App. 4th Cir.1972), writ denied, 260 La. 1201, 258 So.2d 551 (1972). A review of the accident report sent by The Bolton Company to Fireman's Fund shows that it does not constitute a proper demand. Compare Woodard v. Prudential Ins. Co. of America, 350 So.2d 948 (La.App. 2nd Cir.1977), writ refused, 352 So.2d 1046 (La. 1977); Steadman v. Pearl Assurance Company, 167 So.2d 527 (La.App. 4th Cir. 1964), application denied, 246 La. 911, 168 So.2d 822 (1964).
In Jacks v. Banister Pipelines America, 418 So.2d at 529 (La.1982), the Louisiana Supreme Court set forth when the sixty-day period of LSA-R.S. 22:658 commenced to run as follows:
The lower courts correctly refused to impose penalties and attorney fees in this case. Although the insurance company failed to pay compensation for several months after it received satisfactory proof of loss from the insured, there is no proof that the insurer failed to `make such payment within sixty days after receipt of such proofs and demand therefor....' [emphasis added] La.R.S. 22:658. In order to subject an insurer to penalties and attorney's fees, a worker's compensation plaintiff must prove that the company arbitrarily, capriciously or without probable cause failed to make timely payment after receipt of both a demand therefor and satisfactory proof of loss. Moore v. St. Paul Fire & Marine Ins. Co., 251 La. 201, 203 So.2d 548 (1967). The plaintiff in the present case offered evidence by stipulation that a demand letter was mailed to the insurer, but we have been unable to find any evidence in the record that such a demand was actually received more than sixty days prior to the commencement of compensation payments. Accordingly, we are constrained to find that the plaintiff has failed to carry his burden of proof on this issue.
*698 (Underscoring added).
The trial court found as fact that (1) Fireman's Fund was justified in terminating compensation benefits on June 12, 1981; (2) there were no allegations that from March 13, 1981, until June 12, 1981, that "Fireman's Fund was ever late in any of the compensation payments"; and (3) "the initial compensation was not timely paid" (November 7, 1980, through March 20, 1981). Stevenson does not contest these factual findings but only seeks an increase in the award for attorney's fees.[3] However, Fireman's Fund contests the factual finding that the initial payments were in violation of LSA-R.S. 22:658. Stevenson failed to prove that compensation benefits were unpaid more than sixty days after demand therefor. Assuming a proper demand in the phone call of January 21, 1981, all compensation payments were brought up-to-date by March 13, 1981, a period of only fifty-one days.
Clearly, an award for statutory penalties is not warranted. Upon receipt of both satisfactory proof of loss and a demand for compensation benefits, defendants made timely compensation payments. Therefore, we conclude that the trial judge erred in awarding plaintiff statutory penalties,[4] and the majority erred in increasing the award.
For the foregoing reasons, we respectfully dissent.
CARTER and LANIER, Judges, dissenting from the failure of the majority to grant a full rehearing.
LANIER, Judge.
We agree that the decree of the majority opinion on original hearing erroneously omitted to award legal interest and that the limited rehearing decree properly awards such. However, we believe the original majority judgment is wrong and dissent from the failure to grant a full rehearing.
NOTES
[1] In any event, the statement in question was an out-of-court statement on an issue collateral to the issues presented in plaintiff's suit. A trial court should not judge a plaintiff's credibility on the basis of testimony relating to a purely collateral issue. Robertson v. Scanio Produce, 449 So.2d 459 (La.1984).
[2] Subsequent to the LSU accident, plaintiff was involved in an automobile accident, which occurred when she backed her car into a gas pump at a convenience store. However, plaintiff stated she was only going 5 to 10 miles per hour at the time, sustained no injury and did not seek any medical treatment. This testimony is uncontradicted.
[3] In so stating this court does not wish to imply a belief the surgery was unnecessary. Although this court has reached no decision on this issue for the reason stated, we note there appears to be no evidence in the record sufficient to dispute Dr. Adatto's testimony that he discovered and corrected a foraminal depression during this surgery, or his final diagnosis of foraminal stenosis.
[1] From the record it is unclear whether Dr. DeJean discharged plaintiff or referred her to Dr. Bolton; however, it is clear that Dr. DeJean could not find any objective reason for plaintiff's complaint of pain.
[2] Worker's compensation insurers were placed under LSA-R.S. 23:1201.2 by Acts 1983, 1st Ex. Sess. No. 1, effective July 1, 1983. LSA-C.C. art. 8; LSA-R.S. 1:2.

The Saltamacchia, Lee, Hale and Miracle cases cited in the majority opinion were decided under LSA-R.S. 23:1201.2. The West case cited by the majority does not specify which statute it was decided under, but only the employer was a party defendant. The Antoine, Whatley, Chavis and Johnson cases were decided under LSA-R.S. 22:658.
There were significant differences between the provisions of LSA-R.S. 22:658 and LSA-R.S. 23:1201.2 prior to Acts 1983, 1st Ex. Sess. No. 1. LSA-R.S. 23:1201.2 required "written notice;" LSA-R.S. 22:658 required oral or written "satisfactory proofs of loss." LSA-R.S. 22:658 required a demand; LSA-R.S. 23:1201.2 did not. LSA-R.S. 23:1201.2 provided an employer was liable for reasonable attorney's fees if he arbitrarily, capriciously or without probable cause discontinued payments; LSA-R.S. 22:658 did not so provide.
[3] Based on the testimony and reports of Drs. DeJean, Bolton, Clifford and Wilson, Fireman's Fund had a serious, good faith defense on the issue of disability and could litigate without being subject to statutory penalties. Walton v. Normandy Village Homes Assn., Inc., 475 So.2d 320 (La.1985); Hammond, 419 So.2d at 833; Patin v. Continental Cas. Co., 424 So.2d 1161 (La.App. 1st Cir.1982), writ denied, 429 So.2d 145 (La.1983).
[4] The trial court also committed error by assessing the 12% penalty against all compensation benefits due between November 7, 1980, and March 20, 1981. The 12% penalty can only be assessed on compensation benefit payments that are overdue more than sixty days. Latiolais v. Home Ins. Co., 454 So.2d 902 (La.App. 3rd Cir. 1984), writ denied, 460 So.2d 610 (La.1984); Basco v. State of La. Dept. of Corrections, 335 So.2d 457 (La.App. 1st Cir.1976), writ denied, 338 So.2d 701 (La.1976); W. Malone & H. Johnson, supra § 389, p 295 n. 64 and the cases cited therein.