449 So.2d 459 (1984)
Richard ROBERTSON
v.
SCANIO PRODUCE & INSTITUTIONAL FOODS, INC. et al.
No. 83-C-2009.
Supreme Court of Louisiana.
April 2, 1984.
*460 Edmond J. Harris, Heisler & Wysocki, New Orleans, for plaintiff-applicant.
John Robert Sarpy, Porteous, Hainkel, Johnson, Sarpy, New Orleans, for defendants-respondents.
DENNIS, Justice.
In this worker compensation case, the work-related accident and the worker's subsequent disability are undisputed; the issue is whether there was a causal relationship between them. The trial court found that there was none and the court of appeal affirmed. We reverse. The causal relationship between a work accident and an employee's disability may be inferred when there is proof of an accident and an ensuing disability without an intervening cause. In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record furnishing a sound reason for its rejection. The employee's uncontradicted testimony, which was objectively corroborated by medical and circumstantial evidence, furnished grounds for such an inference that was not rebutted by the employer's evidence.
Facts
Richard Robertson was injured on December 24, 1980 when he tripped and approximately 300 pounds of frozen chicken fell on top of him at a Popeye's fried chicken outlet. This accident occurred during Robertson's employment with defendant Scanio Produce & Institutional Foods, Inc. As a result of this mishap Robertson complained of lower back pain, was hospitalized and placed in traction. An orthopedic surgeon, Dr. L. Thomas Cashio, treated Robertson during the period following the accident and based solely on x-rays diagnosed a lumbar strain. Neither a myelogram nor any other diagnostic test was ordered or performed. Robertson was released from the hospital on January 14, 1981 despite continued complaints of pain at the fifth lumbar vertebra, or L-5 level of his back, and on January 22 Cashio told his patient that he could return to work but was restricted to light activity. Robertson's unrebutted testimony at trial was that he returned to Scanio but was refused further employment because there was no "light duty" available. The employee continued to see the doctor during February with reports of pain, yet, on February 19 the physician released Robertson to return to normal work. Worker compensation benefits which had been paid since the initial accident claim, were terminated the following day. On March 17, Robertson filed suit against Scanio and its insurer, State Farm Fire & Casualty Co., for reinstatement of benefits, medical expenses and statutory penalties. Two days later Robertson visited Dr. Cashio for the last time. Dr. Cashio prescribed muscle relaxers and advised the patient to continue to increase his level of activity despite continuing pain and suggested that he wear a soft corset for back support. On the same day, Robertson's supervisor at Scanio told him, "I can't use you because you'll just go out and hurt yourself again."
*461 Between his rejection by Scanio and his next medical treatment eleven and a half months later, Robertson held three jobs and performed a temporary roof repair assignment, all of which required some heavy manual labor. He testified at trial that he left each of these jobs after a matter of weeks because his pain either prevented him from working or kept him from arriving on time. He stated that he experienced pain with heavy exertion, but the pain diminished with reduced activity. He explained that he had taken these jobs, despite his pain, to provide for his wife and children. Further, Robertson testified that he was limited to manual labor because his education had ended with the seventh grade. His difficulty in reading exhibits submitted to him during his testimony indicated that he was virtually illiterate. He stated that he suffered no other back injuries during his work at the subsequent jobs and that he filed no other worker compensation claims. In order to be hired for later jobs Robertson underwent two pre-employment physicals. He admitted that in reporting his medical history he purposefully concealed his previous injury in order to enhance his chances of obtaining work. During cross examination defense counsel questioned Robertson concerning his failure to seek medical assistance after his last visit to Dr. Cashio. Robertson responded that he was without funds to pay a doctor after defendants had stopped paying his medical expenses. He claimed that he was unaware free medical treatment for his condition could be obtained at state expense. The witness maintained throughout his testimony that he had followed Dr. Cashio's instructions to try to work, and that he continued to report his pain to his attorney and others. In addition to his testimony, Robertson stated in his answers to interrogatories filed on July 16, 1981 that he had complained of pain since the accident, six months earlier, that he was still totally disabled, and that after the doctor told him to perform light work he still experienced substantial pain upon exertion.
Robertson was next treated in March 1982 by neurosurgeon Dr. David M. Jarrott, whom he consulted on the recommendation of his second attorney. The first attorney, who filed this suit, left the lawfirm which continued to represent Robertson.
Dr. Jarrott noted Robertson's history of back pain and then took a myelogram which proved negative. Because Robertson was still experiencing pain Jarrott suggested surgery or another less drastic diagnostic procedure, a discogram. Dr. Jarrott testified that a significant number of physicians still rely on discograms, but that this test is no longer in vogue, owing in part to the popularity of myelograms. Robertson opted for the discogram. The surgeon interpreted the discogram to show a rupture at the L5-S1 disc level, the point at which Robertson had experienced pain immediately following his accident at Popeye's. Dr. Jarrott operated and discovered a herniated disc.
Pertinent Legal Principles
The plaintiff in a worker compensation suit must establish by a preponderance of evidence that the injury sustained was caused by the accident at issue. Martin v. Zachry, 424 So.2d 1002 (La.1982); West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). Absent proof of an intervening cause, a claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, and symptoms of the disabling condition commenced at the time of the accident and continuously manifested themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977). See also, Guillory v. USF & G, 420 So.2d 119 (La.1982); 3 Larson, The Law of Workmen's Compensation, § 80.33(d) (1983 ed.) (discussing Louisiana's treatment of this presumption and similar presumptions recognized in West Virginia and Hawaii).
The presumption of causation is not irrebuttable, rather when established, its *462 effect is to shift the burden of proof to the defendant. Haughton v. Fireman's Fund American Insurance Co., 355 So.2d 927 (La.1978).
In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, where the record indicates no sound reason for its rejection. West v. Bayou Vista, supra at 1147; Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967); Farley v. Ryan Stevedoring Co., 238 La. 1048, 117 So.2d 587 (1960); Bonanno v. Decedue, 186 La. 1041, 173 So. 756 (1937).
Testimony at Trial
At trial Robertson relied primarily on his own testimony that the onset of his continual pain coincided with his undisputed work accident at Popeye's and on Dr. Jarrott's testimony that the herniated disc discovered during surgery was causally related to the work accident. Dr. Jarrott stated that he pursued his chosen course of treatment partially in response to his patient's report of continued pain, his description of how that pain waxed and waned with work assignments and the location of the discomfort. The doctor concluded that his initial diagnosis was borne out by his findings during surgery.
The defense based its case on the testimony of Dr. Cashio who treated Robertson soon after the accident for a lumbar sprain. Dr. Cashio testified that he detected no indication of an injury more serious than a lumbar strain; specifically, since Robertson did not complain of leg pain there was no reason to suspect the presence of nerve root irritation which is indicative of a disc injury. Dr. Cashio was not asked to speculate as to the cause of the herniated disc which was discovered fourteen months later.
Dr. Robert L. Applebaum, a neurosurgeon who did not examine or treat Robertson, was called by the employer and testified that, based on his examination of Dr. Cashio's medical records including x-rays and the myelogram and discogram performed by Dr. Jarrott, it was his opinion that the employee could have sustained his herniated disc on one of the later jobs. Dr. Applebaum also testified, however, that his skepticism that the accident at issue caused the herniated disc was due to the absence of any medical treatment from the time Dr. Cashio released Robertson until a year later when Dr. Jarrott first examined the employee. In response to the judge's questioning Dr. Applebaum admitted that it was reasonable to believe that the disc injury related back to the accident at Popeye's if Robertson's complaints of persistent pain could be believed. Defendants failed to present testimony from any witness such as persons who worked with Robertson after his Scanio accident, casting doubt on his claims of continual pain. In fact, defendants presented no direct evidence whatsoever tending to prove an intervening accident between the employee's work accident and his herniated disc removal operation.
The trial court essentially found that the plaintiff's uncontradicted testimony did not prove that the employee's herniated disc was causally related to his work accident, for reasons we find insufficient. The court of appeal noted the trial court's reasons for refusing to accept the plaintiff's uncontradicted testimony of the work-accident. Without applying the principle announced by this court in West v. Bayou Vista Manner, 371 So.2d 1146 (La.1979), although it was cited in the plaintiff's court of appeal brief, the court of appeal affirmed the trial court's dismissal of the claim.
We granted certiorari, 441 So.2d 768 (La. 1983) because the intermediate court failed to review the plaintiff's contentions, which indicated that, under applicable legal principles, the trial court erred in refusing to accept the employee's uncontradicted testimony proving the accident, corroborated by medical evidence and circumstances which proved an ensuing disability without an intervening cause.
Application of Legal Precepts
It is evident that the plaintiff presented his own uncontradicted testimony establishing a presumption that his disability *463 resulted from his work accident, and that the defendants failed to produce any direct evidence of an intervening cause to rebut the presumption. Accordingly, unless there is a sound reason in the record to reject the plaintiff's testimony, he is entitled to compensation.
The trial court refused to accept the plaintiff's testimony on grounds which are purely collateral to the issues in this lawsuit. Succinctly, the three reasons given in the court's opinion were: plaintiff lied about his previous medical history in order to get a job to feed his wife and children; he stated he did not know that state subsidized medical attention was available for his back injury; and he did not call as a witness the first attorney who commenced handling his case.
In our opinion these do not constitute sound reasons for rejecting the uncontradicted testimony of the plaintiff and the surgeon who removed a herniated disc from his back. Plaintiff's out of court misrepresentations of his physical condition for the purpose of earning a livelihood for his family simply do not warrant disbelief of all his sworn testimony in a court of law. It does not necessarily follow that, because a man falsified his health record to obtain employment, he would commit perjury. Nor does it follow from Robertson's testimony that he did not know whether the state would furnish free medical treatment for his back injury. Although this court has general knowledge of the function of our state hospital system, it frankly is not certain of the answer to this question in the precise case of Robertson's compensable accident injury. Finally, Robertson had no reason and certainly no duty to call his initial attorney as a witness. The trial court suggested this individual could testify as to whether the plaintiff complained to him about back pain during pertinent times. This evidence would have been admissible only as rehabilitation or support evidence in the event Robertson's testimony in this regard had been contradicted or he had otherwise been impeached. McCormick, Law of Evidence § 49 (2nd ed. 1972); 4 Wigmore, Evidence §§ 1122 et seq. (Chadbourn rev. 1972). Since neither impeachment nor contradiction occurred, Robertson was not entitled to introduce such evidence. Therefore, his failure to do so was in accord with law and cannot be held against him.
Conclusion
We hold that Robertson carried his burden of proof that the injury sustained while working at Popeye's, an injury stipulated to by defendants, was the cause of his continued pain from the time of the accident until his surgery when his complaints were corroborated by the presence of a herniated disc. Since defendants did not sufficiently rebut the presumption of causation favoring Robertson's case by introducing any direct or circumstantial proof of an intervening injury, we reverse the courts below and order that compensation benefits be reinstated retroactive to the date they were curtailed and that all associated medical expenses incurred be reimbursed.
REVERSED.
LEMMON, J., dissents and will assign reasons.