HALL, Judge.
In this suit for workers’ compensation benefits, Clark H. Morgan, Jr. appeals the judgment of the trial court in which the appellee, General Motors Corporation, was found to have already paid appellant all benefits to which he was entitled. Appellant contends he,is entitled to permanent partial disability benefits for 400 weeks subject to a credit for benefits paid, to payment of certain unpaid medical bills, and to penalties and attorney fees. We affirm the judgment of the trial court.
Appellant was injured at the General Motors automobile plant in Shreveport around November 1, 1981. An air wrench gun became caught on the moving assembly line, the attached air hose was stretched out, and the gun, when suddenly released, was propelled back toward appellant with substantial force. Appellant raised his right arm to protect himself, and was struck on his right wrist by the gun. He reported the injury immediately, and was given whirlpool treatments at the plant for approximately two weeks. Appellant then consulted his family physician, Dr. Albert Powell, who X-rayed the wrist, discovered a hairline fracture into the joint surface, and placed a cast on the wrist. As a result of Dr. Powell’s finding, appellant was paid workers’ compensation benefits from November 6 through November Í5, 1981. Upon the recommendation of Dr. Powell, appellant was placed on light duty “wiping down” trucks. On November 28, 1981, appellant returned to Dr. Powell with complaints about his wrist. Dr. Powell recommended that appellant not return to work immediately, and appellant did not return to work until January 18, 1982. Appellant was paid benefits for the time period, November 28, 1981 through January 17, 1982. On February 2, 1982, appellant consulted Dr. Austin Gleason, an orthopedic surgeon. Dr. Gleason removed appellant’s cast, took X rays, and placed a splint upon the wrist. The doctor’s impression of appellant’s condition at that time was post-traumatic syno- *88 vitis, an inflammation of the lining inside the joint. The X rays showed no fracture, leading Dr. Gleason to believe that the fracture discovered by Dr. Powell had healed. Appellant returned to see Dr. Gleason numerous times, his last visit being on August 25, 1982. Over this period of time, appellant complained of pain and discomfort in his wrist, and was sent back to work with restrictions upon performing heavy work with the right hand. Dr. Gleason testified that he never released appellant to go back to his job without restrictions, but also admitted that his findings were based mainly upon appellant’s subjective complaints.
While appellant was being treated by Dr. Gleason, he was referred by Dr. Gleason to Dr. Clinton McAllister, another orthopedic surgeon. Dr. McAllister saw appellant three times in March 1982 and once in April 1982. Dr. McAllister testified that he also found the fracture had healed, and that his treatment was based mainly on appellant’s subjective complaints. Dr. McAllister also recommended that appellant be placed on light duty at work. On April 2, 1982, the date appellant last visited Dr. McAllister, he was released from the doctor’s care with no restrictions. Dr. McAllister testified that this release did not mean that appellant did not still have some disability of the wrist, but that appellant had no permanent disability.
During the same time interval, Dr. Tom Reilly, Medical Director at General Motors, set up an appointment for appellant with Dr. Phillip Osborne, who specialized in the treatment of chronic pain. The appointment apparently was set up after appellant complained of pain when performing work requiring him to lift weights of approximately 50 pounds. Dr. Osborne testified that he saw appellant on June 2, 1982, tested him, but failed to pinpoint any definite physical problem. Dr. Osborne found that the wrist appeared to be healed, noted that appellant appeared to be overrespond-ing to his problem, and suggested that a psychiatrist see the patient.
After being tested by Dr. Osborne, appellant returned to work and was placed on a job referred to as “the belt schedule operation.” Appellant testified that he performed the job, but had pain in his wrist which eventually led him to refuse to perform the job at a later date. His refusal to perform the job resulted in his termination at the end of July 1982. Dr. Reilly, who had recommended appellant be placed on the belt schedule operation job, testified that his examination of appellant, his communication with Dr. Gleason concerning the type of work appellant could perform, and his personal observation of the belt schedule operation job, led him to conclude appellant should have been able to perform the job given him.
After being terminated appellant moved to Baton Rouge where he began retraining for another line of work. At this time, on referral from Dr. Gleason, appellant began to see Dr. Joe Morgan, another orthopedic surgeon. Dr. Morgan first saw appellant on October 11, 1982. Dr. Morgan indicated appellant’s condition at that time was such that, had appellant still been employed at General Motors, he probably would have been disabled from performing his job. Dr. Morgan operated on appellant’s wrist on October 29, 1982, removing a ganglion cyst. After surgery Dr. Morgan noted that the wrist progressed well, and on January 28, 1983 Dr. Morgan told appellant that he could engage in whatever work he wished; no restrictions were placed on employment. The only time after January that Dr. Morgan noted a possible correlation between a questionable tenderness in the wrist and a complaint by appellant was on one occasion in March 1983. The doctor felt temporary tenderness might have been caused by stretching the scar tissue associated with the surgery, but felt such tenderness was merely a temporary setback that would probably settle down in less than a week. Dr. Morgan last saw appellant in April 1983.
Dr. Morgan could not state that appellant’s ganglion cyst was causally related to his work injury. The doctor had seen patients in whom such cysts were not related *89 to injury, but had also seen patients in whom cysts seemed to be related to prior injury. Furthermore, the cysts tended to fluctuate in size. The other two orthopedic surgeons who treated appellant, Drs. Gleason and McAllister, also testified that such cysts tended to come and go. Neither of these doctors discovered a cyst during their treatment of appellant in the months preceding Dr. Morgan’s treatment.
As the result of a grievance proceeding, appellant was rehired at General Motors in Shreveport. He returned to work performing the brake line job on May 17, 1983, complained of pain from his wrist, and did not return to work the next day. General Motors then had appellant examined by Dr. Gordon Mead, another orthopedic surgeon. Dr. Mead first saw appellant on June 3, 1983. He subsequently saw appellant numerous times, the last visit occurring on August 18, 1983. Dr. Mead diagnosed appellant’s condition as tendonitis. However, he admitted that there were never any objective findings to support his diagnosis other than the surgical sear itself; his treatment was based solely upon appellant’s subjective complaints. While Dr. Mead testified that he had no reason to doubt appellant’s truthfulness over the major course of his treatment, the doctor did express concern that appellant was exaggerating his complaints on August 18, 1983, when appellant requested that he be given a cortisone injection and that his hand be put in a cast. Dr. Mead would not state that the wrist surgery was the probable cause of any tendonitis, but did state that appellant would be a more likely candidate for tendonitis after his surgery than before.
Appellant returned to work on July 14, not having worked since May 17. He was paid benefits from May 19, 1983 through June 10, 1983, and from June 13, 1983 through July 4,1983. When he returned to work, he was placed on the body cushion job where he worked two days, July 14 and 15, and complained of experiencing pain. He was then off work until July 21. On that day he worked about 20 minutes in the morning before being terminated that afternoon.
Noting that the court seldom had to assess a plaintiff’s credibility so critically, the trial judge observed that many of the doctors examining appellant were unable to find any objective support for his complaints. While an employment accident clearly occurred which had a causal relation with appellant’s original disability, the trial judge felt appellant had received adequate payments for that disability, and felt appellant failed to show by a preponderance of the evidence that he was still disabled a year and one-half after the accident.
Initially we note that no issue exists as to whether an employment related accident occurred, or as to whether appellant was initially disabled. The issue is whether appellant continued to be disabled during periods of time for which no workers’ compensation benefits were paid.
In Robertson v. Scanio Produce, 449 So.2d 459 (La.1984), the Louisiana Supreme Court reviewed legal principles pertinent in the present case:
“The plaintiff in a worker compensation suit must establish by a preponderance of the evidence that the injury sustained was caused by the accident at issue. Martin v. Zachry, 424 So.2d 1002 (La.1982); West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). Absent proof of an intervening cause, a claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, and symptoms of a disabling condition commenced at the time of the accident and continuously manifested themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977). See also Guillory v. U.S.F. & G., 420 So.2d 119 (La.1982); 3 Larsen, The Law of Workmen’s Compensation, § 80.33(d) (1983 Ed.) (discuss *90 ing Louisiana’s treatment of this presumption and similar presumptions recognized in West Virginia and Hawaii.)”
In Robertson, a worker who injured his back was found to have a herniated disc a year and one-half later. The supreme court found that the worker, who was un-disputably disabled, established a causal relationship between the accident and the disability by his uncontradicted testimony, corroborated by medical and circumstantial evidence.
 Unlike the undisputed disability in Robertson, the purported disability in the present case is questionable, not only as to its causation, but also as to its very existence. At the time of his first termination from employment, appellant was still on work restrictions recommended by Dr. Gleason based on the diagnosis of post-traumatic synovitis. On the other hand, Dr. McAllister released appellant to go back to work with no restrictions; while Dr. Osborne found no physical cause for appellant’s problem and felt appellant was over-responding. Furthermore, Dr. Reilly testified that even when considering the work restrictions recommended by Dr. Gleason, appellant should have been able to perform the job assigned to him shortly before his termination. Thus, at the time of his first termination from employment, appellant’s disability was questionable at best; the legal presumption of causation does not operate absent a finding of continued disability. While appellant was undoubtedly disabled immediately after the accident in which his wrist was fractured, the testimony concerning his condition nine months later when his employment was first terminated was such that the trier of fact reasonably found appellant was not still disabled.
Appellant’s claim of continued disability at the time of his second termination is also based on very tenuous evidence. At that time he was diagnosed by Dr. Mead as having tendonitis. Yet Dr. Mead admitted that his diagnosis was based solely upon appellant’s subjective complaints, and on the fact that surgery had earlier been performed on the wrist. Furthermore, when directly asked, Dr. Mead was unable to state that the prior surgery was the probable cause of appellant’s tendonitis. Finally, Dr. Mead admitted that at the last appointment with appellant, he was concerned that appellant was exaggerating his complaints.
Even if a causal relation between the surgery and the finding of tendonitis were accepted as fact, there is still doubt that the need for surgery was brought about by the original accident. The surgery was undertaken to remove a ganglion cyst which may or may not have had any causal relation with appellant’s injury; the etiology of such cysts is unknown.
In Prim v. City of Shreveport, 297 So.2d 421 (La.1974), the supreme court stated:
“Although procedural rules are construed liberally in favor of workmen’s compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff’s case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture.” (Citations omitted).
With the presumption of causation referred to in Robertson, supra, it might be said that appellant carried his burden of showing a causal connection between the accident and his claimed present disability by the slightest of margins, as the medical evidence shows “a reasonable possibility” of a causal connection. Without the presumption, which we find inapplicable under the evidence, appellant failed to carry his burden of showing a causal connection between the accident and the claimed present disability.
Both the causal link between the accident and the cyst, and the causal link between the cyst surgery and the diagnosis of tendonitis are speculative, and the existence of *91 the diagnosed condition itself is based upon appellant’s subjective complaints which, on at least one occasion, may have been exaggerated, supporting the conclusion of the trier of fact that appellant failed to carry his burden by a preponderance as called for in Prim.
Proof of appellant’s disability in this case was based to a great extent on appellant’s subjective complaints of pain. “Proof of disability arising by reason of subjective pain must of necessity depend to a great extent upon the trial court’s evaluation of the truthfulness of the claimant’s complaints in the light of the entire record of medical and lay testimony.” Williams v. Hudson East, 261 So.2d 629 (La.1972). Furthermore, an appellate court should not disturb a trial court’s factual finding absent manifest error, when that finding is based upon a reasonable evaluation of credibility of evidence. Canter v. Koehring Company, 283 So.2d 716 (La.1973). The trial judge in this case found appellant failed to prove he was still disabled one and one-half years after his accident. Based on an evaluation of the entire record, we cannot say that his finding was clearly wrong. Since appellant is found not to have been disabled during the times for which further benefits are claimed, appellant is not entitled to further workers’ compensation benefits, or to penalties and attorney fees.
For the reasons assigned above, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.