602 So.2d 87 (1992)
Charles ROSZELL, Jr., Plaintiff-Appellee,
v.
NATIONAL UNION FIRE INS. CO., et al., Defendants-Appellants.
No. 90-900.
Court of Appeal of Louisiana, Third Circuit.
June 17, 1992.
Writ Denied October 30, 1992.
Charles A. Riddle, Marksville, for plaintiff-appellee.
Gold, Weems, Bruser, Sues & Rundell, Dee D. Drell, Alexandria, for defendants-appellants.
Before DOUCET, YELVERTON and KNOLL, JJ., and HOOD[*] and MARCANTEL,[**] JJ. Pro Tem.
*88 KNOLL, Judge.
The resolution of this worker's compensation case on appeal turns on the trial court's initial determination that Charles Roszell, Jr. proved by a preponderance of the evidence that he suffered a work-related accident while he worked as a roughneck for Butler-Johnson, Inc. The trial court found that Roszell carried his burden of proof, and awarded Roszell temporary total benefits from August 28, 1987, to October 1, 1988, together with supplemental earnings benefits thereafter in accordance with LSA-R.S. 23:1221(3). After considering the closeness of the issues presented, the trial court denied Roszell's claim for penalties and attorney's fees.
Butler-Johnson and National Union appeal. Although they enumerate six assignments of error, all of them hinge on their assertion that the trial court erred in finding that Roszell suffered a work-related accident.
Roszell answered the appeal, contending that the trial court erroneously calculated his supplemental earnings benefits.

FACTS
The learned trial court provided excellent written reasons for judgment detailing the facts of this case which we adopt herein:
"Plaintiff, Charles Roszell, worked for Butler-Johnson, Inc. intermittently for several years prior to July, 1987. After a period of lay off [sic], he returned to work on July 1, 1987 and began duties as a roughneck on a drilling rig near Buffalo, Texas. His first full day of work was July 2. On July 3 there were only two roughnecks on the platform `tripping pipe' although the job was usually done by three. The plaintiff was one of the two roughnecks and the other was described as being inexperienced. Consequently, the plaintiff described his work that day as unusually difficult and strenuous and the weather was very hot. The plaintiff had not been engaged in heavy work during his lay off [sic] and that made the work even more difficult. He testified that he began feeling sick about noon on July 3 and vomited several times but continued working until about 4:00 p.m. when the driller told him to stop working. The driller offered to take him to a doctor but plaintiff told him he thought he would get better. He lay down in the `dog house.' At about 10:30 p.m., he had not improved so he was driven back to the house trailer where the crew lived, a distance of about twenty miles. His condition did not improve and on July 4 he was taken to Leon Memorial Hospital in Buffalo, Texas. His condition was diagnosed as either heat exhaustion or infectious gastroenteritis. The next day, July 5, he was transferred to Navarro Regional Hospital at Corsicana, Texas. At that hospital, the diagnosis was viral gastroenteritis. He remained at that hospital for three days and at his request, he was transferred to St. Frances Cabrini Hospital in Alexandria, Louisiana in order to be nearer his home. The diagnosis at Cabrini Hospital was also viral gastroenteritis. The plaintiff's condition improved but he began suffering a severe headache and neck and back pain. He was discharged from Cabrini Hospital on July 15 and continued outpatient treatment by several physicians after that time.
The defendant paid weekly benefits of $205.33 from July 3, 1987 until August 28, 1987. It is the defendants' position that payments were made under the belief that the plaintiff suffered heat exhaustion on the job and that benefits were terminated when the diagnosis of heat exhaustion was not confirmed. The defendants further contend that the plaintiff did not suffer an accident which was work-related. It is plaintiff's position that he suffered an injury which caused the neck and back pain and that he was totally disabled as a result. After *89 the defendants terminated benefits, this action was filed."

MANIFEST ERROR
Butler-Johnson and National Union contend that the trial court was manifestly erroneous in finding that Roszell proved that he suffered a work-related accident.
Concerning this very issue, our Supreme Court recently reversed this court in the case of Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992), and reinstated the trial court's findings of an accident. In so doing, the Supreme Court stated at pages 360-361:
"As a threshold requirement, a worker in a compensation action must establish `personal injury by accident arising out of and in the course of his employment.' LSA-R.S. 23:1031 (emphasis supplied). The applicable statutory definition of `accident' is `an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.' LSA-R.S. 23:1021(1). While that definition was amended after the occurrence of the accident involved in this case, the governing law in a compensation action is that which was in effect at the time of the alleged injury. Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991).
Louisiana courts consistently have interpreted the work-related accident requirement liberally. Williams v. Regional Transit Authority, 546 So.2d 150, 156 (La.1989). Indeed, it is well-settled in Louisiana that an `accident' exists when `heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a preexisting condition.' Cutno v. Neeb Kearney & Co., 237 La. 828, 112 So.2d 628, 631 (1959); Nelson, supra (collecting cases). Moreover, Louisiana courts view the question of whether there was an accident from the worker's perspective. Williams, supra.

Despite the liberal construction of the statute afforded the worker in a compensation action, the worker's burden of proof is not relaxed. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Id.; Nelson, supra. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation, Section 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, supra; Nelson, supra. Corroboration may also be provided by medical evidence. West, supra.
In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent `circumstances casting suspicion on the reliability of this testimony.' West, 371 So.2d at 1147; Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Gonzales v. Babco Farms, Inc., 535 So.2d 822, 824 (La. App.2d Cir.), writ denied, 536 So.2d 1200 (La.1988) (collecting cases). Indeed, the manifest error/clearly wrong standard of appellate review applies in compensation actions even when the trial court's decision is based solely upon written reports, records or depositions. Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987). *90 Attempting to give meaning to the nebulous terms `clearly wrong' and `manifest error,' we recently enunciated the following general principles that govern an appellate court's power to reverse a trial court's factual findings:
`When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.'
Rosell v. Esco, 549 So.2d 840, 844-45 (La.1989) (citations omitted and emphasis supplied).
As reflected by the underscored language above, in Rosell, supra, we identified two factors that limit the deference due the trier of fact. In West, supra, we identified a third factor especially apt in compensation actions: `the appellate court is not required by [the manifest error/clearly wrong] principle to affirm the trier of fact's refusal to accept as credible uncontradicted testimony ... where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles.' West, 371 So.2d at 1150; See Thomas v. RPM Corp., 449 So.2d 18, 21 (La.App. 1st Cir.), writ denied, 450 So.2d 965 (La. 1984)."
In the case sub judice, the trial court in its written reasons found as follows:
"There is extensive medical testimony by deposition all of which was carefully considered by the court. It is essentially inconclusive as to the issues which the court must determine. On May 2, 1989, the court rendered an interlocutory order requiring further testing by Dr. Riad Hajmurad who had testified that he felt more testing was needed ... Following further examination and testing, Dr. Hajmurad reported that there was no evidence of disc herniation or any nerve root impingement; that the patient can perform `lighter work'; and that he could not determine if the neck and back pain was caused by the illness of July 3, 1987, `but it would seem to be so.' In the March 19, 1990, deposition, Dr. Hajmurad wavered somewhat as to the meaning of `but it would seem to be so' depending upon who asked the questions. But as this court interprets the deposition, he inferred that if the plaintiff's history is true, there is probably a relationship although he does not know if the plaintiff is telling the truth.
The medical evidence is not satisfactory but that is not particularly unusual. In most worker's compensation cases, the principal issue is determining disability whereas in this case, the problem is not only disability but whether there was an accident within the meaning of the worker's compensation law.
It is significant that (a) the plaintiff had been in good health and had a history of being a good worker for the same employer doing strenuous work for several years; (b) he had not done strenuous work for a while prior to the employment which began on July 1, 1987; and (c) his work on the day he became ill was more strenuous than usual because there were only two roughnecks on the job and the other was inexperienced.
The evidence is clear that the plaintiff was very ill and yet continued to try to work. His testimony about neck and back pain is convincing to the court as it was to the treating physicians none of whom so much as hinted that he was *91 fabricating. Certainly, it is possible that it was a coincidence that this pain began at the same time as the illness and that they are not related. However, this appears to the court to be unlikely. Dr. Hajmurad apparently felt the same way when he said `it would appear to be so.' when asked whether the pain was job-related.
The presumption set forth by the Supreme Court of Louisiana in Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977) and discussed in Section 252 of Malone & Johnson, Workers' Compensation Law and Practice, Second Edition, does not literally apply in this case because in the Lucas case there was not a question as to whether there was an accident. However, the reasoning of Lucas does apply in the present situation and based upon that reasoning, it is the finding of the court that the plaintiff did suffer an accident which caused neck and back pain following the illness of July 3, 1987 and that both the illness and the neck and back pain were job-related. The reasoning of Lucas is discussed and applied in many cases decided since, including specifically Robertson vs. Scanio Produce, 449 So.2d 459 (La.1984); Beauclair vs. Rockwood Insurance Company, 430 So. 2d 346 (3 Cir.1983) and Guillory vs. U.S.F. & G., 420 So.2d 119 (La.1982). In Dr. Hajmurad's first deposition (Plaintiff Exhibit # 3) at page 16, he pointed out that it is not unusual for someone doing heavy work to suffer a serious injury but yet `they cannot recall anything happen to them during the work.' He further pointed out that in this case, the plaintiff may have been suffering from back pain on the job but did not pay attention to it `because he was very sick.'
The medical testimony is convincing that the plaintiff was totally disabled for a period of time but the evidence is unclear as to when he was capable of returning to light work. Although the plaintiff testified at trial that he was never capable of returning to work after the illness incident, his testimony does not show a real effort to try and the court finds that he is capable of doing work which is less strenuous than that of an oilfield roughneck.
Dr. Hajmurad testified that he felt the plaintiff was capable of doing light work at the time he performed the myelogram on August 21, 1989. However, this testimony does not indicate that he was unable to work much sooner. The plaintiff testified that he was well enough to go fishing in the Spring following his discharge from the hospital which was the Spring of 1988. He also testified that he went deer hunting several times in the Fall of 1988. Although fishing as the plaintiff described it in his testimony would not mean he was capable of doing light work, going on several deer hunts certainly suggests that he was capable of engaging in some type of gainful occupation."
After carefully reviewing the record in the case sub judice, we do not find that the trial court was clearly wrong or committed manifest error in its conclusion that Roszell suffered a work-related accident. Bruno, supra.
In the present case, the trial court made the following significant findings: (1) Roszell was credible, and his complaints of neck and back pain, as well as their onset coincidental with his hospitalization for viral gastroenteritis, were not fabricated; (2) Roszell was performing very strenuous work when he became ill and that work was more strenuous than usual because the company was working short-handed; (3) Roszell had been in good health and had a history of being a good worker for the same employer doing strenuous work several years; and, (4) that it was not unusual for someone to suffer back pain on the job, but not notice it because another chronic illness, i.e., viral gastroenteritis, masked the onset of back pain on the job.
Moreover, there is ample medical evidence to show that Roszell was almost delerious with fever and he had a very difficult time communicating when he was first hospitalized. Despite these medical problems, the evidence shows that on the last day of employment Roszell continued *92 working until his supervisor made him stop. Because of these additional factors, we find Roszell's inability to pinpoint a specific work accident understandable. Therefore, considering Roszell's medical condition on his last day of work together with the strenuous nature of his work, we find the trial court's factual conclusion with regard to a work accident was not manifestly erroneous.

CALCULATION OF SUPPLEMENTAL EARNINGS BENEFITS
Roszell answered the appeal, contending that the trial court miscalculated his monthly supplemental earnings benefits. In brief, Butler-Johnson and National Union agree that the trial court erred in this regard.
In its written reasons, the trial court calculated Roszell's monthly SEB payment by erroneously using 90% of the difference between Roszell's wages at the time of the accident and the post-accident wages Roszell was able to earn. Instead, the trial court should have used 100% of the difference in wages to calculate Roszell's SEB benefit. LSA-R.S. 23:1221(3). Based on the trial court's calculations, Roszell was awarded $221.30; our computations show that Roszell should have been awarded $309.60 per month. Accordingly, we shall amend the judgment to reflect the increased amount which Roszell was entitled to receive.
Roszell has also briefed the trial court's denial of penalties and attorney's fees, and asked us to make such an award.
LSA-C.C.P. Art. 2133 provides:
"An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded,... The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him and of which he complains in his answer." (Emphasis added.)
An answer to an appeal is equivalent to an appeal, the only material difference being that the answer must state the relief demanded, whereas the appeal brings up for review all or any portion of the judgment that the appellant seeks to have reviewed. LSA-C.C.P. Art. 2133; Kennedy v. Mitchell Engineering, 518 So.2d 1128 (La.App. 4th Cir.1987), writs denied, 523 So.2d 231, 523 So.2d 232 (La.1988).
Although Roszell answered the appeal, he only stated that the trial court's calculation of supplemental earnings benefits was incorrect. In the absence of a statement in the answer that the trial court erred in denying his prayer for penalties and attorney's fees, we cannot address Roszell's argument in brief that we should reverse the trial court's ruling on this issue. Accordingly, we find that the issues of penalties and attorney's fees are not properly before us.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects, except the award made for supplemental earnings benefits which is amended and recast as follows: IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Supplemental Earnings Benefits are awarded and shall be paid at the rate of THREE HUNDRED NINE AND 60/100 ($309.60) DOLLARS, per month beginning October 1, 1988, and continuing during the period of disability up to a maximum of 455 weeks (based upon the maximum of 520 weeks less 65 weeks of full benefits), plus legal interest on each weekly payment from its due date until paid, subject to all of the provisions of LSA-R.S. 23:1221(3) through 23:1221(3)(f). Costs of this appeal are assessed to Butler-Johnson, Inc. and National Union Fire Insurance Company, Inc.
AFFIRMED AS AMENDED AND RENDERED.
DOUCET, J., and WARREN E. HOOD, J. Pro Tem., dissent and assign reasons.
DOUCET, Judge, dissenting.
I respectfully dissent from the majority opinion in this matter. After reviewing the *93 record, it appears that the illness suffered by Mr. Roszell cannot be considered an accident within the meaning of the Louisiana Worker's Compensation law because there was no causal connection between the employment and the illness. Guillory v. U.S. Fidelity & Guaranty Ins. Co., 420 So.2d 119 (La.1982). An accident may not be presumed and there is no evidence of record of the occurrence of an event which could cause an injury. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Accordingly, the judgment of the trial court should be reversed.
HOOD, Judge Pro Tem., dissenting.
The majority opinion affirms the trial court's conclusion that Roszell proved by a preponderance of the evidence that he suffered a work-related accident. I respectfully dissent.
In doing so the majority quoted with approval the trial judge's written reasons and found the trial court's "factual" conclusion with regard to a work accident neither manifestly erroneous nor clearly wrong. It further quoted extensively from Bruno.
Plaintiff had been employed intermittently for several years as a roughneck by defendant Butler-Johnson, Inc. Between jobs he worked as a commercial fisherman. Both types of employment required strenuous manual labor. He received notice from Butler-Johnson calling him back to work and reported to work at a land rig near Buffalo, Texas on the evening of July 1, 1987. He commenced work on the rig the morning of July 2, "tripping pipe." That work day was uneventful. Around noon on July 3 he became ill, began vomiting and running a fever. He stayed on the job site and continued trying to work until the shift change at about 4:00 p.m. when he was taken to the employee lodging for the evening. He was not better in the morning and was, therefore, taken to Leon Hospital in Buffalo. Within twenty-four hours he was transferred to Navarro Hospital in Corsicana, Texas. From Navarro he was transferred to St. Francis Cabrini Hospital in Alexandria where he remained seven days until he was discharged on July 15. The general symptoms of his sickness included vomiting, diarrhea, high fever, aches and pains all over and headaches. Roszell attributed his illness to his having overheated. Therefore, because of the complaint and in accordance with sound medical practice, from the beginning of his illness he was administered fluids. However, the overwhelming weight of the medical evidence, which plaintiff's attorney did not dispute, established that plaintiff was, in fact, suffering from viral gastroenteritis and not a heat related illness. Viral gastroenteritis is caused by a virus. It was in no way caused by or related to plaintiff's employment.
He was discharged from Cabrini on July 15. Plaintiff testified that after his release, "..., you know I was hurting all over, I was still aching in my joints, in my legs and stuff, and he (Dr. Hajmurad) told me it would be best to see a family, or a general practitioner, and so that's what I did."
He saw Dr. Bryan McCann on August 3.
"Q: Did you have any idea what was wrong with you?
A: No sir, at that time I didn't. The pains were all over me but when I started seeing Dr. McCann, he ... the pain started localizing and I could tell where they was like after I had seen him two or three weeks, he'd give me some kind of medicine which was easing my muscle spasms and stuff down and the pain started localizing in my ...
Q: Where?
A: Lower part of my back and my neck, but the headaches kept coming. With the more movement of my neck the headaches, you know, would be there."
Since August his claim of disability has related primarily to his low back pain. All tests to find the cause of the pain have proven unsuccessful, including a spinal tap, EMG, myelogram, CT scan, electromyography and nerve conduction study. All results were essentially normal.
*94 The statutory authority for receiving worker's compensation is LSA R.S. 23:1021 and 23:1031. Section 23:1031 as it read in 1987 stated:
"If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated ..." (emphasis added)
In Guillory v. U.S. Fidelity and Guaranty Ins. Co., 420 So.2d 119 (La.1982), the Supreme Court stated that the requirements for a successful claim under this statute are "personal injury which is the result of an accident, which accident in turn arises out of and in the course of employment. The Louisiana compensation act does not require that the employment cause the disability. The chain of causation required by the statutory scheme as adopted by the Legislature in R.S. 23:1031 is that the employment causes the accident, the accident causes injury, and the injury causes disability."
Section 1021, parts 1 and 7 define accident and personal injury. In 1987, they read:
Part 1:
"`Accident' means an unexpected or unforseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury."
Part 7:
"`Injury' and `personal injuries' include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted."
The Louisiana Supreme Court and this court have recognized, however, that some conditions commonly referred to as illnesses or diseases can fall within the definition of accidental injuries as contemplated by the worker's compensation law. Parks v. Insurance Co. of North America, 340 So.2d 276 (La.1976); Boren v. La. Pacific Corp., 486 So.2d 1190 (La.App. 3d Cir.), writ denied, 489 So.2d 1277 (La.1986). In such cases, the causal connection between the employment activity and the illness becomes the issue.
But in the instant case that issue is not or should no be present. Counsel for plaintiff on appeal did not contend that a causal relationship exists between plaintiff's illness and his employment. Further, he did not contend that the back injury was the result of the illness.
Although the plaintiff in his testimony attributed his present disability to his initial illness, his attorney did not. The medical evidence is not supportive of such a position.
The trial court surmised that there was an "accident" that plaintiff is unaware of. In his testimony plaintiff did not claim that he hurt his back, even by straining it performing his strenuous duties. He did not claim that any event occurred which caused or could have caused an injury to his back. In fact he denied any such occurrence.
The explanation offered as to why plaintiff is unaware of an accident is that he was too sick to notice it. Dr. Hajmurad agreed with counsel that it is possible that plaintiff could have had an accident hurting his back without knowing it because of his sickness. That conclusion was accepted by the trial court and by the majority opinion of this court. Such a theory, however, is purely speculative and conjectural. The evidence at best shows only a possibility of a causative accident.
In Prim v. City of Shreveport, 297 So.2d 421 (La.1974), the Supreme Court stated
"... Likewise, the plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture."
The trial judge placed great emphasis on his belief in plaintiff's credibility. With few exceptions, we are required, of course, to accept the trial court's finding of credibility, Canter v. Koehring Co., 283 So.2d 716 (La.1973), and since there is no manifest error in his finding of disability, I *95 accept that finding also. But my conclusion that plaintiff has failed to prove an accident does not impugn his credibility because he never testified as to the occurrence of an accident. The thrust of his testimony was directed to his disability.
The trial judge cited Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977), as the legal authority for the basis of his finding that an accident had occurred. While recognizing that Lucas does not literally apply in this case because in Lucas there was a proven accident, he stated that "the reasoning of Lucas does apply in the present situation and based upon that reasoning, it is the finding of the court that plaintiff did suffer an accident which caused neck and back pain following the illness of July 3, 1987, and that both the illness and the neck and back pain were job related."
As pointed out above the illness could not be and was not job related, and I fail to see how the "reasoning of Lucas can be the basis of the finding that plaintiff suffered an accident.
Lucas dealt only with the presumption of a causal relationship between a proven accident and a proven disability under certain circumstances. Lucas has nothing to do with the presumption of an accident, and the court's "reasoning" in that case cannot serve as a basis for a presumption of an accident. Lucas serves only to establish a rule for determining causal connection between the disability and an accident. It does not provide a substitute for proof of an accident, and I am not aware of any case that does.
The trial court instead of finding an accident first and then disability caused by the accident, found disability first and then presumed that an accident had occurred to explain the cause of the disability.
I further disagree with the majority opinion's reliance on Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). I, of course, accept Bruno, and this dissenting opinion does no violence to Bruno. But I respectfully believe that the majority opinion's reliance on Bruno is misplaced. In Bruno the claimant testified as to the occurrence of an accident. On appeal, this court did not accept her testimony that she was injured in the course and scope of her employment and found the district court's factual finding that she sustained a work related injury manifestly erroneous or clearly wrong. It was in this context that the Supreme Court discussed the manifest error rule. Here, the plaintiff did not testify that an accident had occurred. In fact he denied, any such occurrence.
The major issue in Bruno was plaintiff's credibility. Here, the question of the occurrence of an accident is not based on anyone's credibility. The trial court's conclusion that an accident occurred is not a factual conclusion, as was the case in Bruno. It is a conclusion based on speculation.
In summary, I have no quarrel with the trial court's finding of disability. But I do find manifest error in the conclusion that an accident occurred. There is absolutely no evidence to support such a finding. First, the illness cannot be considered an accident because there is no causal connection between the employment and the illness. Second, there can be no presumption of an accident. Such a conclusion would be conjectural and speculative. Third, there is no evidence of an occurrence of any event that could cause an injury. Accordingly, the judgment of the trial court should be reversed.
NOTES
[*] Judge Warren E. Hood, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[**] Judge Bernard N. Marcantel, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.